No. 00-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 150

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

RICHARD LEE PRICE,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade,
                  The Honorable Marge Johnson, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Carl B. Jensen, Jr., Attorney at Law, Great Falls, Montana

       For Respondent:

          Hon. Mike McGrath, Attorney General; Jim Wheelis,
          Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; John Parker, Deputy County
          Attorney, Great Falls, Montana


              Submitted on Briefs:  February 21, 2002

                    Decided:  July 2, 2002

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    By Information filed in the District Court for the Eighth Judicial District in Cascade County, the Defendant, Richard Lee Price, was charged with driving under the influence of alcohol (DUI), a fourth or subsequent offense, and four misdemeanors: failure to wear a seatbelt, driving while the privilege to do so is revoked, failure to yield the right of way, and failure to exhibit proof of insurance.  Prior to trial, Price pled guilty to the misdemeanors.  Following a jury trial, Price was convicted of the DUI charge and for that offense was sentenced to twelve months imprisonment, and an additional four years of probation.  For the misdemeanors, the District Court fined Price and sentenced him to two days in jail for driving with a revoked license and ten days in jail for failure to exhibit proof of insurance.  All sentences were to run consecutively.  The misdemeanor jail sentences were deemed served because Price had served eighteen days in jail awaiting trial.  The District Court credited the remaining six days of time served to Price's DUI sentence.  Price appeals from his DUI conviction and the District Court's application of time served.  We affirm both the  conviction and the sentence of the District Court.

¶2    The following issues are presented on appeal:

¶3    1.  Did sufficient evidence exist to support Price's DUI conviction?

¶4    2.  Did the District Court properly award credit for time served?

FACTUAL AND PROCEDURAL BACKGROUND

2

¶5 On March 15, 1999, the State charged Price by Information with one count of DUI, a fourth or subsequent offense, in violation of § 61-8-401, MCA (1997), as well as four misdemeanor offenses. In support of the DUI charge, the State alleged that "Defendant operated or was in actual physical control of a motor vehicle, a 1988 gray Chevrolet Beretta, on a way of this state open to the public, Fourth Street North, while under the influence of alcohol." The misdemeanors for which Price was charged included failure to wear a seatbelt, driving while the privilege to do so is revoked, failure to yield the right of way, and failure to exhibit proof of insurance. All offenses were alleged to have occurred in Great Falls, Montana, on March 5, 1999.

¶6 Price pled guilty to the misdemeanors prior to trial. The DUI charge was tried before a jury on January 18, 2000. At trial, the State first called Great Falls police officer Shane Sorenson as a witness. Sorenson testified that at approximately 9:30 p.m. on March 15, 1999, he was on duty in his patrol car when he observed Price drive his vehicle from a stop sign and into the path of an approaching vehicle, which struck Price's vehicle on the driver's door. After the accident, Sorenson approached each vehicle to check for possible injuries. Price informed Sorenson that his neck hurt. Sorenson then crawled into the back seat of Price's vehicle and immobilized Price's neck until medical personnel arrived.

¶7 Sorenson noticed that Price had alcohol on his breath and that his speech was slurred. According to Sorenson, Price was asked by medical personnel whether he had been drinking that night, and Price responded affirmatively. Sorenson, however, was concerned

3

that Price's incoherence may have been caused by a possible concussion given the nature of the accident.

¶8 Sorenson testified he then met with Price at the hospital approximately forty-five minutes to an hour after the accident. Sorenson noticed that Price's speech was still slurred, his eyes appeared to be bloodshot, and he still smelled of alcohol. Price was read his Miranda warning and given the Montana Implied Consent Advisory. Although Price initially agreed to give a blood sample, he subsequently refused citing his fear of needles. Price then agreed to give a breath sample. However, after Sorenson retrieved his portable breath tester, Price again refused, based on his professed belief that breath tests were inaccurate. Sorenson then issued Price a DUI citation "[g]iven the secondary indicators that I observed, given the eyes being bloodshot and glazed, given the incoherence and slurred speech, given the odor of the alcoholic beverages, then the primary indicator being impaired judgment, being that he pulled out directly in front of an oncoming vehicle at night with it's [sic] headlights on . . . ." Sorenson did admit that if Price had taken a breath test which produced negative results for alcohol, he would not have issued Price a citation.

¶9 Price testified that when he pulled up to the stop sign prior to the accident, he and his girlfriend, Shelly Simons, were involved in an argument, and that out of frustration and anger, he accelerated. Price testified that after the accident, everything was a "blur," and that the impact of the collision caused his slurred voice.

4

¶10 Price did admit that he had been drinking prior to the accident. Price testified that at about 3:30 or 4:00 p.m., he and Simons shared approximately three-quarters of a quart of beer. Sometime later, Price drank what he characterized as "less than a beer" at Jakers, a local restaurant and casino. At about 7:00 p.m., Price and Simons went to a friend's house, where they stayed until about 9:00 p.m. At the friend's house, Price had a couple more beers. In all, Price admitted to consuming the equivalent of five beers in a six hour span. However, Price testified to his belief that the alcohol did not affect his driving.

¶11 Two other witnesses testified. Simons, who was with Price at the time of and preceding the accident, testified that Price's voice was not "incoherent or slurred" before the accident. She also testified that despite his consumption of alcohol, Price was not intoxicated. The final witness at trial was Price's emergency room physician, Dr. Betty Kuffel. Kuffel testified that when Price arrived at the hospital, he was "completely restrained and smelled of alcohol. He was cooperative. His speech was slurred and he appeared intoxicated." She identified no medical condition such as a head injury that would have accounted for Price's slurred speech.

¶12 Price filed a motion for a directed verdict based on his contention that there was insufficient evidence to support the conviction. His motion was denied. The jury convicted Price of DUI on January 18, 2000. On May 15, 2000, the District Court sentenced Price to the Department of Corrections for twelve months, followed by an additional four years of probation. For the misdemeanors, the District Court imposed fines and sentenced Price

5

to two days in jail for driving with a revoked license and ten days in jail for failure to exhibit proof of insurance. All sentences were to run consecutively and the misdemeanor jail sentences were deemed served because Price had already served eighteen days in jail awaiting trial. The District Court then credited Price with six days of time served toward his DUI sentence.

¶13 Price objected to the manner in which the District Court awarded credit for time served, and requested full credit for time served toward each charge for which he was held following his arrest. On May 16, 2000, Price filed a Notice of Appeal. The District Court issued a final written judgment on June 26, 2000.

## STANDARD OF REVIEW

¶14 We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7.

¶15 The District Court's award of credit for time served in this case was based on a statutory interpretation. A statutory interpretation is a conclusion of law, which we review to determine whether the district court's interpretation of the law is correct. *State v. Sullivan* (1994), 266 Mont. 313, 318, 880 P.2d 829, 832.

## DISCUSSION

### ISSUE 1

6

¶16 Did sufficient evidence exist to support Price's DUI conviction?

¶17 Price contends that the State failed to provide sufficient evidence to support his DUI conviction. Specifically, he argues that Officer Sorenson's admission that he would not have cited Price for DUI had he taken a breath test and tested negative was an admission that there was insufficient evidence to convict.

¶18 The State asserts that there was sufficient evidence, without a breath test, to convict Price of DUI. The State contends that Sorenson's response was not an admission that the evidence was insufficient, but simply a response to a hypothetical question. The State asserts that the conviction in this case was supported by a variety of factors, including Sorenson's observation of Price's driving behavior, Price's incoherent and slurred speech, the odor of alcohol on Price, Price's admission that he had been drinking, Price's bloodshot eyes, and the emergency room physician's observations.

¶19 In *State v. Lias* (1985), 218 Mont. 124, 127, 706 P.2d 500, 502, we explained the substantial evidence test:

> In applying the substantial evidence test to determine whether there was sufficient evidence to support the jury verdict, this Court is governed by established principles. In applying the test the evidence is viewed in a light most favorable to the prevailing party. The weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact. If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail. The test is met if a reasonable mind would accept the evidence as supporting the conclusion reached. [Citations omitted.]

The manner in which a vehicle is driven can be evidence of driving under the influence of alcohol. *State v. Peterson* (1989), 236

7

Mont. 247, 250, 769 P.2d 1221, 1223. The State is not required to produce evidence of a quantifiable blood alcohol content to demonstrate a defendant is under the influence of alcohol. *See generally State v. Brady*, 2000 MT 282, ¶ 28, 302 Mont. 174, ¶ 28, 13 P.3d 941, ¶ 28 (stating in the context of a DUI case that "the State is not obligated to supply any specific type of evidence: a jury may consider the facts and circumstances of an accident and the observations and opinions of witnesses, giving effect to the evidence it finds credible.").

¶20 In this case, substantial evidence supported the jury's verdict. Sorenson himself, who testified to investigating "probably 30" DUI charges within the past year, witnessed Price's driving behavior. Price recklessly entered an intersection from a stop sign without regard to oncoming traffic. Following the accident, Sorenson observed that Price's speech was incoherent and slurred, and that he smelled of alcohol. Price himself admitted that he had been drinking prior to the accident. The emergency room physician testified that Price smelled of alcohol, his speech was slurred and that he appeared intoxicated. Taken as a whole, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Price was driving under the influence of alcohol. Therefore, the DUI conviction is affirmed.

ISSUE 2

¶21 Did the District Court properly award credit for time served?

¶22 The District Court sentenced Price to jail time for three charges. For the misdemeanors, Price was sentenced to two days in jail for driving with a revoked license and ten days for failure to

provide insurance. For the DUI conviction, Price was sentenced to twelve months to the Department of Corrections. The District Court ordered Price's sentences to run consecutively. To account for the time Price spent in county jail awaiting trial, the District Court credited Price with eighteen days of time served. The District Court first applied Price's credit to the misdemeanor jail sentences, a combined twelve days, and then applied the remaining six days of credit toward the DUI sentence.

¶23 Price contends that the District Court erroneously applied § 46-18-403(1), MCA, the statute which requires credit for incarceration prior to conviction. Price contends that the District Court was required to grant him full credit for time served on *each* sentence imposed. Therefore, according to Price, not only should his two and ten day misdemeanor jail sentences have been deemed served, but he should also have received an eighteen day credit against his DUI sentence.

¶24 The State, on the other hand, contends that the District Court correctly interpreted § 46-18-403(1), MCA, when it applied the eighteen days of credit once against the total time to be served for the three consecutive sentences. The State asserts that awarding the full amount of time served toward each sentence, when sentences run consecutively rather than concurrently, would lead to an absurd result and is inconsistent with the approach uniformly taken in other jurisdictions.

¶25 Section 46-18-403(1), MCA, provides:

> **Credit for incarceration prior to conviction.** (1) Any person incarcerated on a bailable offense and against

9

whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered.

¶26 Statutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is necessary. *Clarke v. Massey* (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. This Court must attempt to discern and give effect to the intention of the Legislature, § 1-2-102, MCA; *State v. Hubbard* (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333, and construe each statute so as to avoid an absurd result "and to give effect to the purpose of the statute." *Infinity Ins. Co. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, ¶ 46, 14 P.3d 487, ¶ 46 (*citing Christenot v. State, Dept. of Commerce* (1995), 272 Mont. 396, 401, 901 P.2d 545, 548).

¶27 We conclude that Price's interpretation is not warranted by the plain language of the statute and would result in a fundamental unfairness in the administration of criminal sentencing among similarly situated defendants. The Hawaii Supreme Court recently stated the inherent problem:

Statutes giving credit for presentence confinement were designed to ensure equal treatment of all defendants whether or not they are incarcerated prior to conviction. Granting presentence credit, therefore, seeks to place an in-custody criminal defendant who cannot afford to

post bail in the same position as his counterpart with bail money.

> Once credit has been granted, no additional purpose is served by granting a second or "double credit" against a later consecutive sentence. Courts in other jurisdictions having similar statutes agree that a defendant who receives consecutive sentences is entitled to presentence credit only once against the aggregate of the consecutive terms, while a defendant sentenced to concurrent terms in effect receives credit against each sentence. [Citations omitted.]

*State v. Tauiliili* (Haw. 2001), 29 P.3d 914, 918. In addition to the potential inequity foreseen by the Hawaii court, the statute does not provide for repeated application of time served. It simply requires that the defendant be credited with time served. That is what was done in this case.

¶28 Price's interpretation of § 46-18-403(1), MCA, would also defeat the Legislature's purpose for permitting consecutive sentences. *See* § 46-18-401, MCA. As noted by the Wisconsin Supreme Court:

> The state offered in its brief a situation where a defendant is charged with multiple misdemeanors. In the state's hypothesis, a criminal who is charged with 25 separate batteries and is in nine months pretrial custody and then receives a nine months sentence on each count consecutively would be immediately discharged if multiple-time credits were to be allowed. While the hypothesis cited is an example of logical overkill, we consider it sufficiently persuasive to convince us that good public policy comports with the meaning we give the sentencing-credit statute.

*State v. Boettcher* (Wis. 1988), 423 N.W.2d 533, 539. Although in this case the defendant had earned only eighteen days of presentence credit, it is not unusual that defendants spend six months to a year in jail awaiting trial in complex criminal cases. We agree with the logic expressed by the Wisconsin Supreme Court.

11

For the foregoing reasons, we hold that § 46-18-403(1), MCA, entitles defendants to credit for presentence incarceration only once against the aggregate of all terms imposed when multiple sentences are imposed consecutively.

¶29 Our interpretation of § 46-18-403(1), MCA, is consistent with that uniformly followed in other jurisdictions which have interpreted similar statutes. *See, e.g.*, *State v. Tauiliili* (Haw. 2001), 29 P.3d 914, 918; *Blankenship v. State* (Md. Ct. Spec. App. 2000), 763 A.2d 741; *State v. Sanchez* (Neb. Ct. App. 1994), 520 N.W.2d 33; *State v. Percy* (Vt. 1992), 612 A.2d 1119; *People v. Watts* (Mich. Ct. App. 1991), 464 N.W.2d 715; *State v. Miranda* (N.M. 1989), 779 P.2d 224; *State v. Cuen* (Ariz. Ct. App. 1988), 761 P.2d 160; *State v. Riley* (Mo. Ct. App. 1988), 761 S.W.2d 745; *Nissel v. Pierce* (Or. 1988), 764 P.2d 224; *Endell v. Johnson* (Alaska App. 1987), 738 P.2d 769, 771; *State v. Arcand* (N.D. 1987), 403 N.W.2d 23; *People v. Pluskis* (Ill. App. Ct. 1987), 515 N.E.2d 480; *Schubert v. People* (Colo. 1985), 698 P.2d 788; *Effinger v. State* (Minn. 1986), 380 N.W.2d 483; *State v. Decker* (N.H. 1985), 503 A.2d 796; *State v. Aaron* (N.M. Ct. App. 1985), 703 P.2d 915; *State v. Jenkins* (Kan. Ct. App. 1984), 690 P.2d 396; *State v. Cruz-Mata* (Ariz. 1983), 674 P.2d 1368; *State v. Hoch* (Idaho 1981), 630 P.2d 143; *Simms v. State* (Ind. Ct. App. 1981), 421 N.E.2d 698; *People v. Brown* (Cal. Ct. App. 1980), 107 Cal.App.3d 858; *Commonwealth v. Carter* (Mass. App. Ct. 1980), 411 N.E.2d 184; *People ex rel. Bridges v. Malcolm* (N.Y. 1978), 379 N.E.2d 156; *State v. Richardson* (N.C. 1978), 245 S.E.2d 754; *Wilson v. State* (Wis. 1978), 264 N.W.2d 234; *Cox v. State* (Kan. 1974), 522 P.2d 173; *Miller v.*

12

*State* (Fla. Dist. Ct. App. 1974), 297 So.2d 36; *United States ex rel. Derengowski v. United States Attorney Gen.* (8th Cir. 1972), 457 F.2d 812; *Holland v. State* ( Md. Ct. Spec. App. 1971), 284 A.2d 874; *State v. Johnson* (Iowa 1969), 167 N.W.2d 696.

¶30  In this case, Price was entitled to receive "credit for each day of incarceration," and the District Court properly awarded Price credit for each day served.  Of the eighteen days of presentence incarceration, twelve days were credited against the sentences imposed for the two misdemeanor offenses.  The District Court then applied the remaining six days of pretrial incarceration toward Price's DUI sentence.  Therefore, Price was given "credit for each day of incarceration" – no more, no less.  Accordingly, we conclude that the District Court's interpretation of the law regarding credit for time served was correct.

¶31  For the foregoing reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

13

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART