DA 09-0553

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 75

---

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHARLES LEE HORNSTEIN V,

      Defendant and Appellant.

---

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DC 08-0489
                  Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Charles Lee Hornstein V, (self-represented litigant); Shelby, Montana

      For Appellee:

           Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
           Assistant Attorney General; Helena, Montana

           Fred Van Valkenburg, Missoula County Attorney; Andrew W. Paul,
           Deputy County Attorney; Missoula, Montana

---

                  Submitted on Briefs:  March 17, 2010

                            Decided:  April 13, 2010

Filed:

            _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Charles Lee Hornstein V, self-represented, appeals from an order entered by the Fourth Judicial District Court, Missoula County, denying his motion for credit to his sentence for time served. We reverse and remand.

¶2 The sole issue on appeal is whether the District Court erred in denying Hornstein's motion for credit for time served.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On September 26, 2008, at the Southgate Mall in Missoula, a mall employee recognized Hornstein as a previous shoplifter and notified mall security. A security officer responded to the call and found Hornstein in the parking lot, but as the officer approached, Hornstein fled and a chase ensued. The officer and the Missoula City Police eventually apprehended Hornstein, who had four baseball caps on his person, three of which still had store pricing tags.

¶4 Police arrested Hornstein and impounded his vehicle, which was parked in the mall parking lot. After discovering Hornstein was on parole for a previous crime of aggravated assault, the police contacted his parole officer, who authorized a search of Hornstein's vehicle. This led to the seizure of additional items previously reported stolen from the mall and two syringes which tested positive for methamphetamine.

¶5 The State filed four charges against Hornstein: Criminal Possession of Dangerous Drugs, a felony in violation of § 45-9-102, MCA, Criminal Possession of Drug Paraphernalia, a misdemeanor in violation of § 45-10-103, MCA, and two counts of

2

Theft, both misdemeanors in violation of § 45-6-301(1), MCA. Hornstein initially pled not guilty to these charges, and the District Court set bail in the amount of $50,000. Hornstein was unable to post bail and therefore remained at the Missoula County Detention Facility (County Jail) after his arrest on September 26, 2008. On September 28, 2008, Hornstein's parole officer reported that Hornstein had violated his parole and recommended that further action be taken with regard to his parole status.

¶6    However, Hornstein was not returned to the Montana State Prison (State Prison) to face parole-related proceedings, but instead was kept at the County Jail under the $50,000 bail to face his new charges. On May 7, 2009, Hornstein pled guilty to the new charges pursuant to a plea agreement. The District Court sentenced Hornstein to three years with the Department of Corrections for the Criminal Possession of Dangerous Drugs and six months for each of the three misdemeanor counts to be served in the County Jail. The court ordered the four sentences to run concurrently with each other, but consecutively with Hornstein's previous sentence for aggravated assault. The court did not grant Hornstein credit for the 224 days[1] he had served in the County Jail while his new charges were pending, reasoning that the Board of Pardons and Parole (Parole Board) would instead apply a credit against his underlying offense of aggravated assault.

¶7    On May 13, 2009, Hornstein was transported to the State Prison. By letter of June 28, 2009, Hornstein asked the District Court to credit the 224 days he had served in

_____

[1] The 224-day period spans the time served from Hornstein's arrest on September 26, 2008, to his sentencing on May 7, 2009. The days after the May 7, 2009 sentencing are counted as time served pursuant to his imposed sentence.

the County Jail to his new sentences: "[E]ven though you ordered the [new] sentence to run consecutive to the previous cause, I must still be given credit for time served in county jail on the new charge . . . ." Before the District Court could respond to Hornstein's request, the Parole Board, on June 30, 2009, revoked Hornstein's parole and ordered that no "dead time"[2] would be charged, meaning that the entire time that Hornstein had been out of prison on parole, including the time spent in the County Jail, would be counted toward his initial aggravated assault sentence. On August 12, 2009, the District Court denied Hornstein's motion for credit for time served in the County Jail toward his new sentence, reasoning that because the Parole Board had already credited the 224 days toward the aggravated assault sentence, Hornstein "is not entitled to credit against both sentences."

¶8 Hornstein appeals.

## STANDARD OF REVIEW

¶9 We review sentences beyond one year of incarceration for legality only. *State v. Ariegwe*, 2007 MT 204, ¶ 174, 338 Mont. 442, 167 P.3d 815 (citation omitted); *State v. Herman*, 2008 MT 187, ¶ 11, 343 Mont. 494, 188 P.3d 978 (citations omitted). We review "whether the court adhered to the affirmative mandates of the applicable sentencing statutes." *Ariegwe*, ¶ 174 (citations omitted).

---

[2] "Dead time" is "the time from the issuance of a parole violation warrant to the date a violator is arrested on that warrant, or the time a parole violator serves in a correctional facility for a separate felony offense committed on parole." Admin. R. M. 20.25.202(3). "The [Parole Board] has sole discretion to determine whether this time will be counted as time served under the term." Admin. R. M. 20.25.202(3).

4

## DISCUSSION

¶10 *Did the District Court err in denying Hornstein's motion for credit for time served?*

¶11 Hornstein argues that the District Court erred by refusing to apply credit for time served in the County Jail to his second, or new sentence. The State argues that because the Parole Board essentially credited that same time to Hornstein's first sentence by not assessing any "dead time," and because Hornstein's new sentence was ordered to run consecutively to his first sentence, he is not entitled to a "double credit."

¶12 Pre-conviction jail time credit toward a sentence granted by statute is a "matter of right." *Murphy v. State*, 181 Mont. 157, 160-61, 592 P.2d 935, 937 (1979) (citations omitted). Whether a district court properly credits time served is not a discretionary act, but a legal mandate. *State v. Hoots*, 2005 MT 346, ¶ 31, 330 Mont. 144, 127 P.3d 369 (citation omitted).

¶13 Section 46-18-403(1), MCA (2007), provides: "A person incarcerated on a bailable offense against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered." We have explained that the underlying purpose of § 46-18-403(1), MCA, is:

> to eliminate the disparity of treatment between indigent and nonindigent defendants. In other words, credit for time served is given so as not to penalize indigent defendants who are unable to post bail and must remain in custody until they are sentenced when nonindigent defendants may secure their release and remain free during that time period.

5

*State v. Kime*, 2002 MT 38, ¶ 15, 308 Mont. 341, 43 P.3d 290, *overruled on other grounds by Herman*, ¶ 12 and n. 1.

¶14 Hornstein's argument relies largely upon our analysis in *Kime*, which addressed the allocation of time to sentences arising from separate proceedings. *See Kime*, ¶¶ 3-4. David Kime (Kime) was serving a prison sentence for felony assault but had been released from the State Prison to participate in a supervised release program. *Kime*, ¶ 3. On November 26, 2000, police arrested and jailed Kime for suspected theft and DUI offenses. *Kime*, ¶ 3. The next day bail of $25,000 for the new charges was set. *Kime*, ¶ 3. On December 5, 2000, Kime was transferred from the jail to the State Prison. *Kime*, ¶ 4. Charges for the new offenses were filed on December 12, 2000. *Kime*, ¶ 5. Kime eventually pled guilty to the new charges and was sentenced on April 2, 2001. *Kime*, ¶ 5. Kime requested that the time between his arrest and his sentencing, about 127 days, be credited toward his new charges, but the District Court refused, crediting only the few days between his arrest and his transfer to the State Prison. *Kime*, ¶ 5. We affirmed, reasoning that § 46-18-403(1), MCA, mandated credit to the new sentence only if the "defendant [was] [] incarcerated on a bailable offense for which he or she receive[d] a sentence of imprisonment" and the incarceration prior to sentencing was "*directly related* to the offense for which the sentence [was] imposed." *Kime*, ¶¶ 13, 16 (emphasis added). We concluded that most of the 127 days Kime claimed were "related to his prior felony conviction and not the charges of which he was convicted in the [new] case." *Kime*, ¶ 16.

Here, Hornstein argues that his incarceration in the County Jail was directly related to his new charges and he is thus entitled to credit under *Kime*'s reasoning.

¶15 The State does not address *Kime,* but instead directs our attention to *State v. Price,* 2002 MT 150, 310 Mont. 320, 50 P.3d 530. Richard Lee Price (Price) was charged with one felony and four misdemeanors. *Price,* ¶ 1. While awaiting trial, Price spent eighteen days in jail. *Price,* ¶ 1. He was ultimately sentenced to twelve months with the Department of Corrections for the felony and twelve days in jail for the misdemeanors, with all sentences to run consecutively. *Price,* ¶ 22. To account for Price's eighteen days of service, the District Court credited twelve days against his misdemeanor sentences and the remaining six days against the felony sentence. *Price,* ¶ 22. Price appealed, arguing that he was entitled to eighteen days of credit toward *each* of the three charges against him. *Price,* ¶ 23. We affirmed the District Court, holding that "§ 46-18-403(1), MCA, entitles defendants to credit for presentence incarceration only once against the aggregate of all terms imposed when multiple sentences are imposed consecutively." *Price,* ¶ 28.

¶16 While *Price* remains instructive regarding credit to be granted when multiple sentences to be served consecutively are imposed, the issue before us does not involve the judicial imposition of such sentences. The District Court denied Hornstein credit for his jail time in consideration of the Parole Board's determination to not count Hornstein's time on parole as "dead time," thus allowing that time to be credited to his first sentence. However, the Parole Board is an administrative agency and its determination about "dead time" on parole is an administrative matter within its broad discretion. Admin. R. M.

7

20.25.202(3). Its discretionary actions with regard to parole time do not preempt the statutory requirement that credit be granted for time served which is "directly related" to a newly imposed sentence—whether to be served consecutively or concurrently with the previous sentence. *Kime*, ¶ 16.

¶17 Hornstein was arrested and jailed on the new charges on September 26, 2008. A probation violation report was made, but Hornstein was left in the County Jail to await resolution of his new charges. Bail was ordered, but because Hornstein was unable to pay, he remained incarcerated on his new charges for 224 days. Hornstein would not have been incarcerated in County Jail for this period but for the new charges, making that time "directly related" to those charges. Thus, under *Kime*, Hornstein was entitled to a 224-day credit against his new sentence.

¶18 We are aware that Hornstein may, as a practical matter, receive a "double credit" toward his sentences for the time at issue here. However, that is ultimately a consequence of the Parole Board's discretionary determination about Hornstein's parole time. Regarding his jail time, the law required credit to be given for the time he served.[3]

¶19 We reverse and remand for the entry of an amended judgment consistent with this Opinion.

---

[3] At the time of sentencing, the Parole Board had not yet determined how to treat Hornstein's parole time. The sentencing court's denial of the statutory credit for time served thus allowed the possibility, had the Parole Board discretionarily decided not to count the parole time, of the denial of any credit for the time Hornstein served.

/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART