

DA 09-0409

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 104

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BRUCE ALLEN PAVEY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause Nos. DC 2008-196AX and
DC 2008-240BX
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender, Helena, Montana

          Lisa B. Kauffman, Attorney at Law, Missoula, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Todd Whipple, Eric N.
Kitzmiller, Deputy County Attorneys, Bozeman, Montana

          Submitted on Briefs: March 17, 2010

                    Decided: May 5, 2010

Filed:

          _____
                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    This consolidated appeal is from two criminal prosecutions in the Eighteenth Judicial District Court, Gallatin County.  Bruce Allen Pavey was convicted of criminal possession of dangerous drugs and issuing a bad check (common scheme).  We affirm.

## ISSUES

¶2    There are two issues on appeal:

1.  Did Pavey reserve his right to appeal the denial of his motion to dismiss on speedy trial grounds?

2.  Did the District Court err in denying Pavey's request that he be given credit for time served?

## BACKGROUND

¶3    In October 2006, Pavey was sentenced to the Montana Department of Corrections (DOC) for five years on an offense committed in Jefferson County.  In May 2007, he was sentenced to DOC for five years on an offense committed in Silver Bow County.  This sentence was to run concurrently with the Jefferson County sentence.  In December 2007, Pavey was granted conditional release and placed under the supervision of the Bozeman probation and parole office.  However, from February 14 to April 15, 2008, he absconded from supervision.  He was taken back into custody on April 15, 2008, at which time a disciplinary hearing was held.  Pavey was then placed at the Montana State Prison (MSP), where he remained during the pendency of the charges in the present case.

¶4    On May 8, 2008, the State filed an information in District Court charging Pavey with failing to register as a violent offender, a felony, in violation of § 46-23-507, MCA,

committed in March and April 2008. This prosecution was numbered "DC-08-105C." On July 21, 2008, the State filed a second information charging Pavey with criminal possession of dangerous drugs (methamphetamine), a felony, in violation of § 45-9-102, MCA, committed in April 2008. This prosecution was numbered "DC-08-196AX." Meanwhile, on May 9, 2008, the State filed a complaint in Gallatin County Justice Court charging Pavey with issuing a bad check, common scheme, a felony, in violation of § 45-6-316, MCA, committed in March, April, and May 2008. This case was transferred to District Court on September 2, 2008, where it was numbered "DC-08-240BX."

¶5 Pavey initially entered not-guilty pleas to all three charges, and the prosecutions were consolidated for further proceedings. But on November 19, 2008, pursuant to a plea agreement reached with the State, he changed his pleas to guilty in all three cases. A sentencing hearing was set for December 31, 2008. On December 29, however, Pavey filed a motion to withdraw his guilty pleas because his counsel had given him erroneous legal advice regarding the possibility of his designation as a persistent felony offender. The State filed a response stating that it did not oppose Pavey's motion. Accordingly, the District Court issued an order on February 8, 2009, permitting the withdrawal of Pavey's guilty pleas.

¶6 On March 12, 2009, the court scheduled jury trials for June 16 (DC-08-105C), June 17 (DC-08-196AX), and June 18 (DC-08-240BX). Pavey then filed motions in all three cases to dismiss for violation of his constitutional right to a speedy trial. He briefed this claim under the four-factor balancing test set out in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. The State filed its response, and Pavey filed a reply. The

District Court held a hearing and subsequently denied Pavey's motions. The court agreed with the State's argument, based on *State v. Sanders*, 163 Mont. 209, 516 P.2d 372 (1973), that the speedy trial clock stopped when Pavey entered his guilty pleas and was reset when Pavey was allowed to withdraw those pleas. Thus, with respect to each of the three cases, the court determined as follows: first, the interval between accusation (when the charge was filed) and the date Pavey entered his guilty plea (November 19, 2008) was less than 200 days; and second, the interval between the withdrawal of his guilty plea (February 8, 2009) and the scheduled trial date (June 16, 17, or 18) was likewise less than 200 days. As such, the court concluded that further speedy trial analysis was not warranted.[1] *See Ariegwe*, ¶ 62 ("If [the interval between accusation and trial is less than 200 days], then further analysis is unnecessary and the claim should be denied.").

¶7 Pavey and the State ultimately reached another plea agreement; and, on June 2, 2009, he entered guilty pleas to criminal possession of dangerous drugs and issuing a bad check (common scheme). The State, in turn, dismissed the failing-to-register charge. At

---

[1] We note that this resetting of the speedy trial clock and division of time intervals was incorrect. *Sanders* is distinguishable in that it involved a retrial following appeal. Still, it is necessary to clarify the statement in *Ariegwe*, ¶ 43, that "the interval between accusation and trial runs . . . to the scheduled trial date or the date on which a plea of guilty is entered, whichever date represents the date of disposition of the case." It is well-settled that a conviction does not occur until sentence is imposed. *See State v. Tomaskie*, 2007 MT 103, ¶ 12, 337 Mont. 130, 157 P.3d 691; *State v. Bonamarte*, 2006 MT 291, ¶ 6, 334 Mont. 376, 147 P.3d 220. Furthermore, this Court has held that the right to a speedy trial applies through sentencing. *See State v. Mooney*, 2006 MT 121, ¶ 15, 332 Mont. 249, 137 P.3d 532. Thus, a guilty plea does not represent "the date of disposition of the case" if, as here, it is withdrawn before sentencing. In evaluating Pavey's motions, therefore, the court was required to consider the entire period from accusation to the scheduled trial date and to attribute the delay from Pavey's November 19, 2008 guilty pleas to the February 8, 2009 withdrawal of those pleas to the appropriate party (*see Ariegwe*, ¶¶ 64-66).

that same hearing, the District Court sentenced Pavey to MSP for five years, none suspended, on the drug possession offense and to MSP for ten years, with five years suspended, on the bad check offense. These sentences are to run concurrently with each other and with all other sentences Pavey is currently serving. Pavey now appeals.

**DISCUSSION**

¶8 ***Issue 1. Did Pavey reserve his right to appeal the denial of his motion to dismiss on speedy trial grounds?***

¶9 Pavey argues that the District Court erred in denying his motions to dismiss for violation of his right to a speedy trial. As a threshold matter, however, we agree with the State that Pavey did not reserve this issue for appeal.

¶10 At the second change-of-plea hearing, held June 2, 2009, the District Court (at defense counsel's request) used the Defendant's Acknowledgement and Waiver of Rights by Plea of Guilty signed by Pavey and filed November 19, 2008, in conjunction with his prior change of plea. Among other things, this document states (with emphasis added):

> 3. I understand by pleading guilty I give up the following:
> a. The presumption of innocence
> b. The right to remain silent
> c. The right to a jury trial
> d. *The right to a speedy and public trial*
> e. The right to have the State prove each element of the offense(s) beyond a reasonable doubt.
> f. The right to summon witnesses on your behalf;
> g. The right to cross-examine the State's witnesses.

Pavey initialed just to the left of the "3."; and during the colloquy with the District Court, he verbally affirmed that he recalled the Acknowledgement and Waiver document from his prior change of plea. In addition, the court asked Pavey whether he understood that

5

by pleading guilty, he would be giving up various rights, including the right to a speedy trial, and Pavey stated that he understood this. The court then found that Pavey "has knowingly and voluntarily waived his rights" and "has knowingly and voluntarily entered pleas of guilty." Pavey does not challenge either of these findings.

¶11 We have said that "a defendant waives the right to appeal all nonjurisdictional defects upon voluntarily and knowingly entering a guilty plea, including claims of constitutional violations which may have occurred prior to the plea." *State v. Violette*, 2009 MT 19, ¶ 16, 349 Mont. 81, 201 P.3d 804. Consequently, after the plea, the defendant may attack only the voluntary and intelligent character of the plea, any jurisdictional defects, and any specified adverse pretrial rulings he has reserved the right to appeal. *See Violette*, ¶ 16. In this regard, § 46-12-204(3), MCA, provides that "[w]ith the approval of the court and the consent of the prosecutor, a defendant may enter a plea of guilty or nolo contendere, *reserving the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion*" (emphasis added). The alleged violation of the right to a speedy trial is a nonjurisdictional-defect claim. *State v. Collier*, 277 Mont. 46, 53, 919 P.2d 376, 381 (1996). As such, the right to obtain review of an adverse determination on a speedy trial motion must be reserved.

¶12 Pavey argues that the "thrust" of § 46-12-204(3), MCA, is that a defendant should not be able to appeal constitutional claims that he expressly "waived" per a plea of guilty. The language of the statute, however, clearly indicates that a claim must be specifically *reserved* in order to be appealable, not that a claim is automatically appealable unless it is expressly *waived*. Moreover, far from reserving his right to appeal the denial of his

6

speedy trial motions, Pavey specifically waived that right in writing (in the Defendant's Acknowledgement and Waiver of Rights by Plea of Guilty) and verbally (during the colloquy with the District Court at the second change-of-plea hearing).

¶13 We therefore hold that Pavey did not reserve his right to appeal the denial of his speedy trial motions under § 46-12-204(3), MCA.

¶14 ***Issue 2. Did the District Court err in denying Pavey's request that he be given credit for time served?***

¶15 Pavey requested at the sentencing hearing that he be given credit for the year he served in prison during the pendency of the charges. In this regard, § 46-18-403(1), MCA, states that "[a] person incarcerated on a bailable offense against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered." The prosecutor objected on the ground that Pavey had been incarcerated under the prior Jefferson County and Silver Bow County convictions, not the new charges. The District Court denied Pavey's request, and Pavey now challenges the court's decision on appeal, noting that criminal possession of dangerous drugs and issuing a bad check are both "bailable" offenses. *See* Mont. Const. art. II, § 21; § 46-9-102, MCA. In addressing this issue, he and the State both discuss *State v. Kime*, 2002 MT 38, 308 Mont. 341, 43 P.3d 290, and *State v. Erickson* (*Erickson II*), 2008 MT 50, 341 Mont. 426, 177 P.3d 1043. In addition, *State v. Erickson* (*Erickson I*), 2005 MT 276, 329 Mont. 192, 124 P.3d 119, and *State v. Price*, 2002 MT 150, 310 Mont. 320, 50 P.3d 530 (which we discussed in *Erickson II*) are also relevant here.

7

¶16 In *Price*, the defendant (Price) was convicted of felony DUI plus several misdemeanor offenses. On the DUI, the court sentenced him to DOC for 12 months, followed by an additional 4 years of probation; and on the misdemeanors, the court sentenced him to a total of 12 days in jail. The sentences were to run *consecutively.* Thus, because Price had served 18 days in jail awaiting trial, the court deemed the 12-day misdemeanor jail sentences as served and then credited Price's DUI sentence with the remaining 6 days of time served. *See Price*, ¶¶ 1, 22. On appeal, Price argued that the court should have granted him full credit for time served as to each sentence imposed; hence, he would receive an 18-day credit as to each misdemeanor jail sentence and an 18-day credit as to his DUI sentence. *Price*, ¶ 23. We disagreed and held that § 46-18-403(1), MCA, entitles defendants to credit for presentence incarceration "only once against the aggregate of all terms imposed when multiple sentences are imposed consecutively." *Price*, ¶ 28. In reaching this conclusion, we quoted with approval the following passage from *State v. Tauiliili*, 29 P.3d 914 (Haw. 2001):

> Statutes giving credit for presentence confinement were designed to ensure equal treatment of all defendants whether or not they are incarcerated prior to conviction. Granting presentence credit, therefore, seeks to place an in-custody criminal defendant who cannot afford to post bail in the same position as his counterpart with bail money.
>
> Once credit has been granted, no additional purpose is served by granting a second or "double credit" against a later consecutive sentence. Courts in other jurisdictions having similar statutes agree that a defendant who receives consecutive sentences is entitled to a presentence credit only once against the aggregate of the consecutive terms, while a defendant sentenced to concurrent terms in effect receives credit against each sentence.

*Id.* at 918 (citations omitted); *see Price*, ¶ 27. The Hawai'i court goes on to state that

8

when concurrent sentences are imposed, presentence credit is applied once. The credit applied once, in effect, is applied against each concurrent sentence. This is done because the longest term of the concurrent sentences determines the total length of the imprisonment. However, when consecutive sentences are imposed, credit for presentence imprisonment is properly granted against only the aggregate of the consecutive sentence terms.

*Tauiliili*, 29 P.3d at 918.

¶17 Following this reasoning, Pavey suggests that he should have received credit for time served during the period between accusation and sentencing in DC-08-196AX and DC-08-240BX because the District Court ultimately ordered the sentences he received in those cases to run *concurrently* with the sentences he is serving for the Jefferson County and Silver Bow County convictions. Under this theory, because all of the sentences are concurrent, the time Pavey served before sentencing in the present case should apply to his Jefferson County sentence, his Silver Bow County sentence, his drug possession sentence, and his bad check sentence. We do not agree, however, that this approach is consistent with the purpose and intent of § 46-18-403(1), MCA.

¶18 In *Kime*, the defendant (Kime) was arrested and jailed on November 26, 2000, on charges of felony theft, DUI, and driving while his license was suspended. Kime did not post bail and, therefore, remained incarcerated. At the time of his arrest, Kime had been participating in a supervised release program as part of a prior sentence for a felony assault conviction. On December 5, 2000, DOC removed Kime from the supervised release program, and he was transferred to MSP to serve the remainder of his felony assault sentence. Kime ultimately pleaded guilty to the new charges and, at sentencing, requested credit for the time he had served between his November 26 arrest and the date

9

of sentencing (April 2, 2001). The district court, however, credited Kime's sentence with just the days he had served between his November 26 arrest and being transferred to MSP on December 5. The court reasoned that as of December 5, Kime was incarcerated due to his prior felony conviction rather than the offenses for which the court was now imposing sentence. *See Kime*, ¶¶ 3-5, 8.

¶19 On appeal, Kime argued that because the three offenses with which he had been charged were all bailable offenses, his sentences on those offenses should have been credited with the entire time he was incarcerated (i.e., between his November 26 arrest and the April 2 sentencing hearing), even though his incarceration during a portion of that time was the result of his prior felony conviction. *Kime*, ¶ 9. We observed, however, that the general purpose of § 46-18-403(1), MCA, is to eliminate the disparity of treatment between indigent and nonindigent defendants; in other words, credit for time served is given so as not to penalize indigent defendants who are unable to post bail and must remain in custody until they are sentenced, when nonindigent defendants may secure their release and remain free during that same period. *Kime*, ¶ 15. We further noted that this purpose "is not served by crediting a defendant's sentence for time served where the defendant would not have been released from custody had he or she been able to post bail in any event as a result of being held on a sentence related to an earlier offense." *Kime*, ¶ 15. Thus, we concluded that under § 46-18-403(1), MCA, "a defendant's sentence may be credited with the time he or she was incarcerated only if that incarceration was directly related to the offense for which the sentence is imposed." *Kime*, ¶ 16. And because Kime had been incarcerated from December 5, 2000, to April 2, 2001, based on his prior

felony conviction, not the new charges, we held that the district court correctly refused to credit his new sentence with the time served between those dates. *Kime*, ¶ 16.

¶20 The situation here is slightly different in that DOC incarcerated Pavey *before* he was charged with the new offenses. Pavey thus opines that while his *initial* incarceration was due to his violating the terms of his conditional release, his *continued* incarceration was "directly related" to the subsequent filing of the new charges and only "incidentally related" to the prior convictions. Pavey claims that "but for" the new charges, he would have been transferred to a less restrictive environment such as prerelease, DOC's Intensive Supervision Program, or a treatment center.

¶21 There are several problems with this argument. First, Pavey points to no evidence in the record establishing that DOC would have released him from incarceration but for the new charges. In fact, he was returned to MSP in the first place because he absconded from supervision while on conditional release under the Jefferson County and Silver Bow County convictions; and the December 12, 2008 presentence investigation report filed by his probation and parole officer refers to Pavey's time on community supervision as "a complete failure" and states that he "is a danger to the community in which he lives and to the Officers that supervise him." All of this suggests that with or without the filing of the new charges, Pavey would have remained incarcerated under the prior convictions. Second, even if, as Pavey suggests, DOC kept him incarcerated only because the State had filed the new charges, this incarceration was still directly related to his prior convictions in the sense that DOC must have determined, in light of the new charges, that Pavey should serve his sentences on the prior convictions at MSP rather than on

11

conditional release. Lastly, assuming that DOC was prepared, at some point during the pendency of the new charges, to grant Pavey conditional release from incarceration, the question then becomes whether at that point he still would have remained incarcerated due to an inability to post the bail set by the District Court on the new charges. Pavey provides no analysis of this question.

¶22 In sum, the record reflects that Pavey's continued incarceration was due at least in part, if not entirely, to his prior convictions. In other words, it appears that during the time period in question, he would have been incarcerated based on those convictions, regardless of the filing of the new charges and regardless of his ability to post bail on the new charges. For these reasons, the general purpose of § 46-18-403(1), MCA, to eliminate the disparity of treatment between indigent and nonindigent defendants, *Kime*, ¶ 15, is not implicated here and would not be served by crediting Pavey's new sentences for time served prior to sentencing.

¶23 *Erickson I* and *Erickson II* do not support Pavey's contrary arguments. In those cases, the defendant (Erickson) was arrested and jailed on November 1, 2001, on the charge of criminal possession of dangerous drugs. He remained incarcerated until July 25, 2002, when he posted a $5,000 commercial surety bond and was released. But Erickson was again arrested and jailed on September 19, 2002, this time on the charge of operation of an unlawful clandestine laboratory. He remained incarcerated and ultimately pleaded guilty to both charges. The court then sentenced him to five years at MSP, all suspended, on the drug possession charge and to ten years at MSP, with five years suspended, on the clandestine lab charge. These sentences were to run concurrently. In

addition, the court credited Erickson's drug possession sentence with the time he served from his November 1, 2001 arrest on that charge to his July 25, 2002 release on bail, and credited his clandestine lab sentence with the time served from his September 19, 2002 re-arrest to the December 19, 2003 sentencing hearing. *See Erickson I*, ¶¶ 5-10.

¶24 On appeal, Erickson argued that the time served from his September 19, 2002 re-arrest to the December 19, 2003 hearing should have been credited to *both* sentences, not just the clandestine lab sentence, because the bond he had posted on the drug possession charge was revoked on September 18, 2002, and he was in jail awaiting trial on both charges. *Erickson I*, ¶ 17. We agreed with this legal theory, observing that if his $5,000 bond was in fact revoked by his bondsman and he was surrendered to the sheriff, he then was incarcerated awaiting trial on *both* charges. "His incarceration was, in such instance, directly related to the [drug possession charge], and § 46-18-403(1), MCA, would require that he receive credit for the time between his arrest and when judgment was entered on that charge." *Erickson I*, ¶ 24. On the other hand, if his bond was never revoked, then he was not incarcerated on the drug possession charge after his release on July 25, 2002, and he thus was not entitled to receive credit against the drug possession sentence for time served after his re-arrest on September 19, 2002. *Erickson I*, ¶ 25. We remanded for a determination of whether Erickson's bond was in fact revoked in the drug possession case, *Erickson I*, ¶ 26, and the court ultimately determined on remand that the bond had *not* been formally revoked, *see Erickson II*, ¶ 22. We therefore affirmed the court's decision not to credit Erickson's drug possession sentence with the time served between his re-arrest and the sentencing hearing, noting that this period of incarceration

was directly related to the clandestine lab charge and was only incidentally related to the drug possession charge. *Erickson II*, ¶ 23.

¶25 Our discussion in *Erickson I*, ¶¶ 22-24, supports the proposition that a period of presentence incarceration may simultaneously apply to two separate, pending, bailable offenses, entitling the defendant, upon conviction of those offenses, to credit for time served against *both* sentences (if they are to run concurrently, *see Price*, ¶¶ 27-28). But this principle is of no aid to Pavey here. While the drug possession and bad check offenses with which he was charged were bailable offenses, the record reflects that his presentence incarceration was attributable to his prior Jefferson County and Silver Bow County convictions, which by definition were not "bailable offenses" under § 46-18-403(1), MCA. *See* § 46-9-102(1), MCA. As we said in *Kime*, ¶ 15, the purpose of § 46-18-403(1), MCA, is not served by crediting a defendant's sentence for time served where the defendant would not have been released from custody had he been able to post bail in any event as a result of being held on a sentence related to an earlier offense.

¶26 We accordingly conclude that the District Court did not err in denying Pavey's request that his sentences on the present offenses be credited with the time he served prior to sentencing.

## CONCLUSION

¶27 Pavey failed to reserve his right to appeal the denial of his motion to dismiss on speedy trial grounds, and the District Court did not err in refusing to credit Pavey's sentences on the present convictions with the time he served prior to sentencing.

14

¶28    Affirmed.


                                                      /S/ JAMES C. NELSON


We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS