**FILED**

December 4 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0133

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 311

AUGUSTINA STURCHIO,

      Petitioner and Appellee,

  v.

WAUSAU UNDERWRITERS INSURANCE CO.,

      Respondent, Insurer and Appellant.

APPEAL FROM:    The Workers' Compensation Court, Cause No. WCC 2006-1583,
                Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Larry W. Jones, Law Offices of Larry W. Jones, Missoula, Montana

      For Appellee:

          J. Kim Schulke, Linnell, Newhall, Martin & Schulke, PC,
          Great Falls, Montana

                        Submitted on Briefs:  November 14, 2007

                                  Decided:  December 4, 2007

Filed:

                  _____
                             Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Wausau Underwriters Insurance Company (Wausau) appeals from the judgment of the Workers' Compensation Court (WCC). We affirm.

¶2 We restate the issue as follows:

¶3 Did the WCC err when it interpreted § 39-71-123, MCA (2003), to allow the use of multiple methods to calculate Sturchio's average actual wage from concurrent employments?

## BACKGROUND

¶4 On June 11, 2005, Augustina Sturchio (Sturchio) suffered a back injury while working as an on-call certified nursing assistant (CNA) for Priorcare at Liberty County Nursing Home in Chester, Montana. Wausau accepted the claim and began paying medical and wage-loss benefits. At the time of her injury, Sturchio was concurrently employed with five employers: Priorcare, as an on-call CNA; Prairie Travelers, as an on-call CNA; Toole County Ambulance, as an on-call EMT; Marias Medical Center, as an on-call CNA; and Saints Nursing, as a traveling CNA. Sturchio's employers differed in their methods of paying compensation with some paying weekly and others paying sporadically based on the as-needed work she performed for them.

¶5 Sturchio filed a claim with the WCC alleging, among other things, that she was entitled to higher compensation benefits because Wausau incorrectly calculated her average actual wage from concurrent employments when it determined her wage-loss benefit. Wausau responded that Sturchio was not entitled to additional benefits. After

conducting discovery, the parties submitted the case to the WCC on a statement of agreed facts.

¶6 The parties agreed that Sturchio was employed by five concurrent employers when she was injured and that § 39-71-123, MCA (2003), governed the calculation methods to determine Sturchio's average actual wage; they disagreed, however, as to the proper method of calculating her average actual wage. Sturchio argued that each of the concurrent employments should be considered individually and that the average actual wage should be determined pursuant to the statutory method best suited to each employment's particular circumstances. Wausau responded that the statute authorizes specific methods of calculating wages and that, while more than one of the methods may be appropriate, only one method should be used for all concurrent employments—the injured worker cannot "pick and choose" which method to use depending on each individual employment. The WCC rejected Wausau's single-calculation method and held that Sturchio correctly interpreted § 39-71-123, MCA (2003). The WCC then calculated Sturchio's average actual wage using this interpretation. Wausau appeals the WCC's interpretation of § 39-71-123, MCA (2003).

## STANDARD OF REVIEW

¶7 We review for correctness the WCC's conclusions of law. *Simms v. State Compensation Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, ¶ 11, 116 P.3d 773, ¶ 11. We apply the Workers' Compensation Act (the Act) effective at the time an employee suffers an injury. *Wilson v. Liberty Mut. Fire Ins.*, 273 Mont. 313, 316, 903 P.2d 785,

3

787 (1995).  The 2003 version of the Act governed when Sturchio was injured on June 11, 2005.

## DISCUSSION

**¶8     Did the WCC err when it interpreted § 39-71-123, MCA (2003), to allow the use of multiple methods to calculate Sturchio's average actual wage from concurrent employments?**

¶9     Wausau asserts that the WCC abandoned the rules of statutory construction and failed to defer to the Legislature when it interpreted § 39-71-123, MCA (2003), as allowing Sturchio to determine her average actual wage pursuant to both subsections (3)(a) and (3)(b).  Wausau maintains that Sturchio could calculate her wages under either subsection, but she could not use both.

¶10     The WCC's interpretation of § 39-71-123, MCA (2003), presents a conclusion of law which we review for correctness.  *State v. Price*, 2002 MT 150, ¶ 15, 310 Mont. 320, ¶ 15, 50 P.3d 530, ¶ 15.   When interpreting statutes, we seek to implement the Legislature's objectives.  *Boettcher v. Montana Guar. Fund*, 2007 MT 69, ¶ 19, 336 Mont. 393, ¶ 19, 154 P.3d 629, ¶ 19.   The statute's plain language controls our interpretation if we can discern the legislative intent from the plain meaning of the statute's words.  *Boettcher*, ¶ 19.  Further, we refuse to insert "what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.

¶11     Section 39-71-123, MCA (2003), sets forth the methods for calculating an injured employee's wages:

(3)(a) Except as provided in subsection (3)(b), for compensation benefit purposes, the average actual earnings for the four pay periods immediately preceding the injury are the employee's wages, except that if the term of employment for the same employer is less than four pay periods, the employee's wages are the hourly rate times the number of hours in a week for which the employee was hired to work.

(b) For good cause shown, if the use of the last four pay periods does not accurately reflect the claimant's employment history with the employer, the wage may be calculated by dividing the total earnings for an additional period of time, not to exceed 1 year prior to the date of injury, by the number of weeks in that period, including periods of idleness or seasonal fluctuations.

(4)(a) For the purpose of calculating compensation benefits for an employee working concurrent employments, the average actual wages must be calculated as provided in subsection (3). As used in this subsection, "concurrent employment" means employment in which the employee was actually employed at the time of the injury and would have continued to be employed without a break in the term of employment if not for the injury.

¶12 Wausau argues that the WCC effectively amended subsection (4)(a) to read: "the average actual wages must be calculated as provided in subsection (3)**(a) or (b) or both."** (Emphasis added by Wausau.) Wausau reasons that, because § 39-71-123(4)(a), MCA (2003), refers to subsection (3) to calculate the wage-loss benefit for concurrent employments, wages for concurrent employments must be calculated one of two ways— either pursuant to subsection (3)(a) or subsection (3)(b), but not both subsections. Wausau further argues that § 39-71-105, MCA (2003), the Legislature's public policy declaration requiring that wage-loss benefits "bear a reasonable relationship to actual wages lost[,]" cannot be used to expand the calculation methods. Wausau relies on *King v. State Compensation Ins. Fund*, wherein we refused to use the public policy provision

5

to vary the specific provisions of § 39-71-123, MCA. 282 Mont. 335, 339, 938 P.2d 607, 609-10 (1997). We disagree with Wausau's interpretation of § 39-71-123, MCA (2003).

¶13 Section 39-71-123, MCA (2003), focuses on determining an injured employee's proper wages. The statute defines "wages" as "all remuneration paid for services performed by an employee for an employer . . . ." Section 39-71-123(1), MCA (2003). Subsection (1) describes the employer as a singular entity and subsection (3) instructs that the "average actual earnings for the four pay periods immediately preceding the injury" constitute the employee's wages, unless that calculation fails to accurately reflect the injured employee's employment history. The statute provides alternate calculation methods for situations in which the four-pay-period method inadequately approximates an employee's average actual earnings. Section 39-71-123(3), MCA (2003). Thus, § 39-71-123(1) and (3), MCA (2003), detail the appropriate calculation methods to determine an injured employee's average actual earnings with a single employer.

¶14 As with injured workers employed by a single employer, § 39-71-123(4)(c), MCA (2003), provides that employees working for multiple employers also receive a wage-loss benefit based on their average actual wages. The only calculation difference between injured employees with single employment and those with concurrent employments is that the latter are entitled to benefits based on "the aggregate of average actual wages of all employments[.]" Section 39-71-123(4)(c), MCA (2003). Rather than restate the calculation methods, the statute simply instructs that the methods applicable to single employment also apply to concurrent employment: "[f]or the purposes of calculating compensation benefits for an employee working concurrent employments, the average

6

actual wages must be calculated as provided in subsection (3)." Section 39-71-123(4)(a), MCA (2003).

¶15 Though we agree that only one of the methods described in subsection (3) can ultimately apply to individual employments, the statutory language fails to support Wausau's position that an employee's concurrent employments must be grouped together and considered as a single employment to determine the employee's actual average wage. We refuse to "insert what has been omitted" from the statute, and thus, we reject Wausau's interpretation of the statute. Section 1-2-101, MCA. A reasonable reading of § 39-71-123, MCA (2003), in its entirety, supports the WCC's interpretation that the calculation methods contained in subsection (3) should apply to each individual employment comprising the concurrent employments in the same manner they apply to individual employments that are singular.

¶16 Moreover, the Legislature's express public policy supports the WCC's interpretation and precludes the interpretation offered by Wausau. Montana law instructs that wage-loss benefits "should bear a reasonable relationship to actual wages lost as a result of work-related injury or disease." Section 39-71-105(1), MCA (2003). As the WCC recognized, determining Sturchio's average actual wage for her individual employments would require using different statutory methods: the average actual wage for some of Sturchio's employments properly would be determined under subsection (3)(a) and others under subsection (3)(b). The WCC rejected Wausau's argument for a single-calculation method, stating,

> This would require injured workers with concurrent employments to sacrifice the reasonable relationship between their wage-loss benefits and their actual wages lost for the sake of using a single calculation method, when the express language of § 39-71-123, MCA [(2003)], recognizes the validity of using different calculation methods for different employment situations.

We agree with the WCC; the only interpretation that honors the plain language of § 39-71-123, MCA (2003), and furthers the legislative policy that wage-loss benefits "bear a reasonable relationship to actual wages lost" is the interpretation the WCC employed—applying subsection (3) to each concurrent employment and then using the resulting figures to calculate the employee's aggregate average actual wage. Section 39-71-105(1), MCA (2003).

¶17 Additionally, Wausau finds no support from our holding in *King*. The injured worker in *King* requested that this Court create an exception to the § 39-71-123, MCA, calculation methods because a three-pay-period calculation would have entitled her to greater benefits than the four-pay-period calculation detailed in the statute. 282 Mont. at 338, 938 P.2d at 609. King argued that her proposed calculation method would bear a more reasonable relationship to her actual earnings in furtherance of the public policy expressed in § 39-71-105(1), MCA. King's proposed calculation method, however, was inconsistent with the plain language of § 39-71-123, MCA, and we stated that public policy could not be used to ignore the Legislature's express statutory language. *King*, 282 Mont. at 339, 938 P.2d at 609-10.

¶18 In the present case, a statutory interpretation that allows flexible compensation calculations for concurrent employments is consistent with the plain language of § 39-71-

123, MCA (2003). Moreover, the public policy underlying the Act supports the WCC's interpretation. Though, in *King*, we refused to allow the public policy provisions of § 39-71-105, MCA, to displace the express language of § 39-71-123, MCA, the Legislature specifically directs that § 39-71-105, MCA (2003), be used to interpret the Act. Wage-loss benefits are designed to assist injured workers at a reasonable cost to employers and the benefit should "bear a reasonable relationship to the actual wages lost as a result of a work-related injury or disease." Section 39-71-105, MCA (2003). Adopting Wausau's interpretation of § 39-71-123(3) and (4), MCA (2003), would negate the Legislature's express intent that the wage-loss benefit reasonably relate to the actual wages lost.

¶19    The WCC's interpretation of § 39-71-123, MCA (2003), honors the statute's plain language and furthers the principles set forth in § 39-71-105, MCA (2003). We affirm.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS