FILED

November 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0013

DA 15-0013

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 317

NICK NEWLON,

> Petitioner and Appellee,

v.

TECK AMERICAN, INC.,
(formerly Cominco),

> Respondent and Appellant.

APPEAL FROM:     Montana Workers' Compensation Court, WCC No. 2012-2947
                 Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> > Larry W. Jones, Wills Law Firm; Missoula, Montana
>
> For Appellee:
>
> > Margaret Dufrechou, Dufrechou Law Firm; Helena, Montana

Submitted on Briefs:  July 22, 2015
Decided:  November 10, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Teck American Incorporated (Teck) appeals from the Findings of Fact, Conclusions of Law, and Judgment of the Montana Workers' Compensation Court (WCC), finding that Nick Newlon was entitled to medical benefits related to injuries sustained while working for Teck, that Newlon's claim was not barred due to a superseding intervening cause, that Teck was estopped from asserting the 60-month time bar under § 39-71-704(1)(d), MCA (1991), and that Newlon's claim was not barred by a statute of limitations or statue of repose. We affirm.

## ISSUES

¶2 We have restated the dispositive issues as follows:

1. *Did Teck and Newlon form an enforceable contract when both parties agreed to close several of Newlon's claims in exchange for a lump sum payment and lifetime health benefits for his knee and back?*

2. *If Teck and Newlon formed an enforceable contract, can Teck assert the 60-month rule under § 39-71-704(1)(d), MCA (1991), to avoid liability for payment of Newlon's benefits?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Teck is a mining and resource extraction corporation that acquired Cominco American (hereinafter referred to as "Teck" for clarity) in its entirety in 2001. Nick Newlon worked for Teck as a miner for over 20 years. Originally hired in 1972, he worked for Teck until the mine closed in 1993. During his years working at the mine, Newlon was injured on the job in several incidents including at least three separate injuries involving his left knee. Newlon also reported numerous other work-related injuries over the years because Teck's safety policy required employees to report injuries,

2

no matter how minor. While the record reflects some confusion regarding the timing of the knee injuries, Newlon's initial knee injury appears to have occurred sometime in 1974, with a subsequent injury in 1978, and another injury on October 3, 1991. After the October 3, 1991 injury Newlon's left knee problems continued to get worse. Ultimately, Newlon had corrective surgeries on the knee in 1993 and 1996. Despite the surgeries, the symptoms and problems persisted.

¶4     In 1996, Newlon was approached by Teck's assistant manager, Hugh Moore, to discuss settlement of all Newlon's existing Workers' Compensation claims. During their settlement negotiations Newlon's goal was to secure health coverage for his left knee and back conditions because his medical providers had warned him that he would probably need future treatment for the injuries. After discussions with Moore, Newlon, acting without legal representation, agreed to settle all of his outstanding injury claims against Teck for a lump sum of $25,000 and lifetime medical care for his left knee and back. Newlon agreed to the settlement because he understood that he would be fully covered the rest of his life. Under the agreement, Teck gained the benefit of closure of all of Newlon's other injury claims previously suffered by Newlon. Teck prepared the settlement documents and Newlon signed the agreement. Moore forwarded the documents to the Montana Department of Labor and Industry (DOLI) with an enclosed note stating, "[t]he special provisions are that the medical is retained by the claimant or left open in the two cases indicated but closed in all others." The DOLI agreement does not list the injury dates of the claims settled; it lists the two open claim numbers noting that one claim is for "lower back" and the other for the "left knee."

¶5 After the 1996 left knee surgery and the settlement, Newlon did not obtain medical treatment for the knee until 2000. Newlon sought treatment in 2000 because his knee continued to swell, give out unexpectedly, and lock up after kneeling. After treatment in 2000, Newlon did not seek medical treatment for his knee until 2007. Teck authorized benefits and paid for Newlon's left knee treatment from the inception of his injuries through September 2010. Newlon still has problems with his knee, including swelling, pain, and inability to stand and put weight on the left knee after kneeling. In 2012, his doctors recommended a total left knee replacement. On December 21, 2011, Teck's counsel informed Newlon's counsel that Teck believed it was not liable for further medical care under § 39-71-704(1)(d), MCA (1991). Teck agreed to pay medical benefits under a reservation of rights while working toward a resolution.

¶6 In anticipation of Teck's change of position regarding his medical coverage, Newlon filed a Petition for Hearing in the WCC on September 2, 2011, asking the court to order Teck or the Montana State Fund to pay medical benefits based on his left knee claim. The Montana State Fund was subsequently dismissed from the suit and Newlon filed a second Petition for Hearing on May 17, 2013, asking the WCC to order Teck to continue to provide medical coverage for Newlon's left knee injury including costs, penalties, and attorney fees. The parties prepared for trial. On October 9, 2013, the parties filed a joint pretrial order with the WCC and the case was tried in Helena. On May 8, 2014, the WCC issued its Findings of Fact, Conclusions of Law, and Judgment in the case. The court found that the dispute is governed by the 1991 Montana Workers' Compensation Act. The court also found that Newlon's claim was not barred due to a

4

superseding intervening cause, and that Teck was equitably estopped from denying medical benefits on Newlon's claim on the basis of § 39-71-704(1)(d), MCA (1991). Finally, the court determined that Teck's statute of limitations and statute of repose defenses were moot, and Newlon's claim was not barred by estoppel or laches.

## STANDARD OF REVIEW

¶7     We conduct de novo review of the WCC's conclusions of law, including determinations of jurisdiction, to determine whether they are correct. *Thompson v. State*, 2007 MT 185, ¶ 14, 338 Mont. 511, 167 P.3d 867; *Gamble v. Sears*, 2007 MT 131, ¶ 20, 337 Mont. 354, 160 P.3d 537. This Court accords substantial deference to the WCC's findings of facts and we review those findings to determine whether they are supported by substantial credible evidence. *Gamble*, ¶ 20.

## DISCUSSION

¶8     *1. Did Teck and Newlon form an enforceable contract when both parties agreed to close several of Newlon's claims in exchange for a lump sum payment and lifetime health benefits for his knee and back?*

¶9     The parties have argued extensively regarding the conclusions in the WCC's judgment and order including disputes over equitable jurisdiction, equitable estoppel, and the 60-month rule, § 39-71-704(1)(d), MCA (1991). We find that we do not need to address these issues as argued because the issues are resolved under contract law. In our view, this is a case in which a promise was made between two parties, a promise that this Court will uphold.

¶10    The parties made three arguments and we briefly mention these arguments prior to our analysis of the contract formed in this case.  First, Teck disputes the WCC jurisdiction in this case arguing that the court does not have the authority to exercise equitable jurisdiction in Workers' Compensation cases.  Because this argument has no bearing on the contract issue we will not address it.  Second, we find that Teck's argument regarding the second element of equitable estoppel is a new theory raised on appeal.  This argument was not made at the WCC and we will not reach arguments the WCC did not have the opportunity to address.  (*See In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38).  Finally, we review the 60-month rule argument as part of the second issue of this opinion.

¶11    Under § 28-2-102, MCA, four elements must exist for a valid contract to be formed: the parties must have legal capacity, they must consent to the agreement, the agreement must be a lawful object, and the parties must give consideration.  On review of the record of this case, we find all of the necessary elements required for an enforceable contract between Newlon and Teck, a fact neither party disputes in this case.  Both parties agree that each consented to the provisions of the settlement agreement memorialized with the DOLI.  Second, there is no question that a settlement agreement between employers and employees is a lawful objective of a contract.  We have reviewed numerous cases involving similar settlement agreements and have found that Workers' Compensation settlement agreements are enforceable contracts.  *Gamble*, ¶ 24.  Finally, both parties provided proper consideration as part of their agreements in the contract.  Newlon agreed to close thirteen of his fifteen open claims in exchange for a lump-sum

payment and lifetime coverage for his knee and back. Teck provided consideration by paying the settlement amount and agreeing to keep the two claims open. We conclude, based on the record, that a proper contract was formed between the parties and duly memorialized by the DOLI on a standard "Petition for Compromise and Release Settlement" fill-in-the-blank form.

¶12 A specific review of the WCC findings of fact regarding the promises exchanged between these parties further aids our determination regarding the enforceability of this contract. In its findings, the WCC found Newlon to be a credible witness and we rely in part on his testimony from the record to determine the parties' positions at the time of contracting. The WCC found that Moore, Teck's agent at the time, contacted Newlon to discuss the settlement of all of his outstanding Workers' Compensation claims. Moore promised to pay Newlon $25,000 and agreed that future medical care for his knee and his back would be covered by the mining company's insurer. Newlon discussed this arrangement with Moore and asked for coverage for life on his knee and back. Moore agreed to these conditions. Moore drafted the documents and attached a note to the settlement papers from the parties to the Montana Department of Labor and Industry stating: "[t]he special provisions are that the medical is retained by the claimant or left open in the two cases indicated but closed in all others."

¶13 The subsequent actions of the parties under the contract further illustrate the understanding of the parties. The WCC found that from the formation of the settlement agreement with Teck in 1996 until December 21, 2011, Teck paid Newlon's medical benefits and left open his treatment with no reference to the 60-month rule. From the

7

beginning, Teck, through its representative Moore, represented to Newlon that he would enjoy medical benefits for life. We find that the WCC's findings regarding the contract are supported by substantial credible evidence. As a result, we find that in 1996, Moore and Newlon agreed that Newlon would have coverage on his knee and back injuries for life as part of this settlement. We also find that the settlement is a valid and enforceable contract.

¶14 *2. If Teck and Newlon formed an enforceable contract where Teck promised Newlon benefits for life, can Teck still assert the 60-month rule under § 39-71-704(1)(d), MCA (1991), to avoid liability for payment of Newlon's benefits?*

¶15 A fundamental tenet of contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws. *Winter v. State Farm Mut. Auto Ins. Co.*, 2014 MT 168, ¶ 26, 375 Mont. 351, 328 P.3d 665 (*citing Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250). We note that in *Wiard* we held that the laws existing at the time a contract is formed are part of the contract. *Wiard v. Liberty Northwest Ins. Corp.*, 2003 MT 295, ¶¶ 20-21, 318 Mont. 132, 79 P.3d 281 (*citing Earls v. Chase Bank of Texas, N.A.*, 2002 MT 249, ¶ 12, 312 Mont. 147, 59 P.3d 364).

¶16 The WCC concluded that the law in effect at the time of the settlement was the 1991 Montana Code Annotated, and that § 39-71-704(1)(d), MCA (1991), is the law governing the settlement agreement. We agree with the WCC conclusions on governing law. In this case however, the governing law (60-month rule) is not dispositive. On review of the relevant Workers' Compensation statutes, we find no provision preventing an employer from contracting around the statute, or specifically, preventing an employer

8

from promising more than is provided in the statute. Because there is no conflict with the relevant statutes, we do not find that the promise of lifetime care is an illegal objective that invalidates the contract. Just the opposite, the facts surrounding Newlon's settlement agreement reflect a promise made that effectively extends the coverage beyond the statutory rule because ultimately, under a legal contract, a deal is a deal.

¶17 Teck also argues that this case is identical to our decision in *Wiard* and that we must conclude similarly that Newlon is barred from his benefits. We disagree. In *Wiard*, we determined that Wiard was barred by § 39-71-704(1)(d), MCA (1991), from further benefits under his settlement agreement with his insurer because he failed to access those benefits for more than 60 months. *Wiard*, ¶ 39. However, unlike Newlon, *Wiard* did not have a specific promise from his employer similar to that made in this case. *Wiard*, ¶¶ 8-12, 14-18. While Wiard entered into a settlement agreement with his employer closing benefits and keeping some health claims open, the facts of the case do not indicate a specific lifetime coverage promise. *Wiard*, ¶¶ 8-12, 14-18. Teck's promise to Newlon distinguishes this case from *Wiard*, and we cannot reach the same conclusion because the promise must be enforced.

¶18 We find that the tenet of freedom to contract allows a party to a settlement agreement to make a promise that is durable even beyond the limits of the 60-month rule found in § 39-71-704(1)(d), MCA (1991). A specific promise was made in this case to Newlon, promising Newlon benefits for life. This tenet is based on the notion that the parties are in the best position to decide the contractual provisions based on their own interests. Here, in our interpretation of the contract, we "simply [give] effect to the

agreement between the parties in order to enforce the private law of the contract." *Arrowhead*, ¶ 20 (*citing Ophus v. Fritz*, 2000 MT 251, ¶ 23, 301 Mont. 447, 11 P.3d 1192).

¶19 Thus, the 60-month rule does not apply because Teck effectively contracted away this right when the parties made the agreement. While we reach our conclusion on different grounds than the WCC, we find the same result as the court that Teck cannot deny Newlon's health benefits. We conclude that the WCC did not err in its determination that Teck cannot deny medical benefits under Newlon's claims on the basis of § 39-71-704(1)(d), MCA (1991).

### CONCLUSION

¶20 We decline to address Teck's arguments that the WCC lacks the authority to employ equitable remedies. We find Teck's argument regarding the second element of equitable estoppel is newly raised on appeal and we will not reach arguments the WCC did not have the opportunity to address. We find that Moore and Newlon created an enforceable contract granting Newlon lifetime coverage for his knee and back injuries. We simply give effect to a lawful agreement made between the parties. The WCC did not err in its conclusion that Teck cannot deny medical benefits to Newlon on the basis of § 39-71-704(1)(d), MCA (1991).

¶21 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE