FILED

12/27/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0114

DA 22-0114

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 250

TAMARA BARNHART,

Petitioner and Appellee,

v.

MONTANA STATE FUND,

Respondent and Appellant.

APPEAL FROM:     Montana Workers' Compensation Court, Cause No. WCC 2019-4816
                 Honorable David Sandler, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Nick Mazanec, Special Assistant Attorney General, Montana State Fund,
              Helena, Montana

       For Appellee:

              Paul D. Odegaard, Lucas A. Wallace, Odegaard Kovacich Snipes, Helena,
              Montana

                                         Submitted on Briefs:  October 5, 2022

                                                   Decided:  December 27, 2022

Filed:

_____
                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Montana State Fund (State Fund) appeals from the Workers' Compensation Court's (WCC) Order Granting in Part and Denying in Part Petitioner's Motion for Summary Judgment (Order). We reverse.

¶2 We restate the issue on appeal as follows:

*Whether the Workers' Compensation Court erred when it ruled that a permanently partially disabled worker's aggregate wages, calculated at the time of injury, are used to determine the worker's permanent partial disability benefit rate regardless of the worker's actual wage loss at maximum healing.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On September 6, 2017, Petitioner and Appellee Tamara Barnhart suffered a back injury in the course of her employment with Youth Dynamics, Inc. (YDI).[1] At the time of her injury, Barnhart worked an average of 40.6 hours per week at YDI. She also worked an average of 15.2 hours per week at Dairy Queen. Barnhart's two jobs constitute "concurrent employment" within the meaning of § 39-71-123(4)(a), MCA.

¶4 Over the next year and a half, Barnhart was sometimes able to work and sometimes not. On April 9, 2019, her treating physician determined she was at maximum medical improvement (MMI)[2] and assessed her with a Class 2, 10% whole person impairment

---

[1] This case is governed by the 2015 version of the Workers' Compensation Act because that was the law in effect at the time of Barnhart's industrial injury. *Ford v. Sentry Cas. Co.*, 2012 MT 156, ¶ 32, 365 Mont. 405, 282 P.3d 687. All references herein are to the 2015 statutes unless otherwise noted.

[2] "Medical stability," "maximum medical improvement," "maximum healing," or "maximum medical healing" means a point in the healing process when further material functional improvement would not be reasonably expected from primary medical services. Section 39-71-116(21), MCA.

2

rating. Barnhart's treating physician further opined that Barnhart could return to work at YDI but could not return to work at Dairy Queen because of her permanent impairment.

¶5 At the time of her injury, Barnhart earned $14.47 per hour at YDI, for an average weekly wage of $587.40. If considered alone, Barnhart's permanent partial disability (PPD) benefit rate for her work at YDI would be $384.00 per week. At the time of her injury, Barnhart earned $18.55 per hour at Dairy Queen, for an average weekly wage of $281.91. If considered alone, Barnhart's PPD benefit rate for her work at Dairy Queen would be $187.94 per week. The aggregate average weekly wage of Barnhart's concurrent employments was $869.31. Pursuant to § 39-71-703(6), MCA, this resulted in a PPD benefit rate of $384.00.[3]

¶6 On June 24, 2019, State Fund advised Barnhart that it would pay her impairment award at the PPD benefit rate of $384.00, which represented her aggregate YDI and Dairy Queen wages. State Fund advised Barnhart that it would pay her PPD indemnity benefits at the rate of $187.94 per week, which represented only her Dairy Queen wages.

¶7 Barnhart petitioned the WCC, asking the court to order State Fund to recalculate her PPD indemnity benefits at the rate of $384.00 per week. Barnhart argued that State Fund erroneously excluded her YDI wages from its PPD indemnity benefit rate calculation when determining her indemnity benefits.

---

[3] Under § 39-71-703(6), MCA, the weekly benefit rate for PPD is 66 2/3% of the wages received at the time of injury, but the rate may not exceed one-half the state's average weekly wage. In Barnhart's case, because her wages from YDI exceeded one-half the state's average weekly wage, her PPD indemnity benefit rate was limited to the statutory maximum rate, which was $384.00 per week at the time of her injury.

¶8     The parties agreed to submit the case for decision on summary judgment.  After briefing and oral argument, the WCC ruled in Barnhart's favor on the PPD indemnity benefit rate.[4]  State Fund appeals.

## STANDARDS OF REVIEW

¶9     We review a court's grant of summary judgment de novo.  *Hensley v. Mont. State Fund*, 2020 MT 317, ¶ 6, 402 Mont. 277, 477 P.3d 1065.  In so doing, we use the same standard used by the trial court: whether no genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.  *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 9, 353 Mont. 265, 222 P.3d 566.  We review the WCC's conclusions of law for correctness.  *Neisinger v. N.H. Ins. Co.*, 2019 MT 275, ¶ 13, 398 Mont. 1, 452 P.3d 909.  Interpretation and construction of a statute is a matter of law.  *Neisinger*, ¶ 13.

## DISCUSSION

*Whether the Workers' Compensation Court erred when it ruled that a permanently partially disabled worker's aggregate wages, calculated at the time of injury, are used to determine the worker's permanent partial disability benefit rate regardless of the worker's actual wage loss at maximum healing.*

¶10     Montana's Workers' Compensation Act (WCA) recognizes four types of biweekly wage-loss benefits.  Two of these—temporary partial disability and temporary total disability—are available prior to reaching MMI.  Section 39-71-116(37), MCA (defining "temporary partial disability"); § 39-71-712, MCA (providing criteria for temporary partial

---

[4] The WCC also denied Barnhart's request for attorney fees and a statutory penalty.  These rulings are not before this Court on appeal.

disability benefits); § 39-71-116(39), MCA (defining "temporary total disability"); and § 39-71-701, MCA (providing criteria for temporary total disability benefits). Upon reaching MMI, a worker is no longer eligible for temporary disability benefits. At that point, if the worker's physical condition leaves her without a reasonable prospect of physically performing regular employment, she is entitled to permanent total disability benefits. Section 39-71-116(28), MCA (defining "permanent total disability"), and § 39-71-702, MCA (providing criteria for permanent total disability benefits). If, like Barnhart, she has a permanent impairment, she is able to return to work in some capacity but the permanent impairment impairs her ability to work, and she has an actual wage loss as a result of the injury, then she is entitled to PPD indemnity benefits. Section 39-71-116(27), MCA (defining "permanent partial disability"), and § 39-71-703, MCA (providing criteria for permanent partial disability benefits).

¶11 Both permanently totally disabled individuals and permanently partially disabled individuals may further be entitled to an impairment award. *Rausch v. State Comp. Ins. Fund*, 2002 MT 203, ¶¶ 19-20, 311 Mont. 210, 54 P.3d 25. In this case, State Fund correctly calculated Barnhart's impairment award based on the aggregate of her time-of-injury wages for Dairy Queen and YDI because § 39-71-703(2), MCA, provides that a worker who suffers a Class 2 or greater impairment is entitled to an impairment award regardless of wage loss. Barnhart does not dispute this calculation. Barnhart disputes State Fund's calculation of her PPD indemnity benefit rate, based only on her

Dairy Queen wage, because Barnhart did not suffer an actual wage loss from her YDI job upon reaching MMI, as defined by § 39-71-116(1), MCA.[5]

¶12    The WCC ruled that State Fund incorrectly calculated Barnhart's PPD indemnity benefit rate because it failed to include her YDI wages.  The WCC explained that the determination of an injured worker's PPD benefit rate uses a two-step process: first, the worker's time-of-injury wages are determined pursuant to § 39-71-123, MCA; next, that determination is used to calculate the worker's PPD benefit rate pursuant to § 39-71-703(5), MCA.  At the core of the present dispute, the WCC determined that the wage calculation under § 39-71-123, MCA, takes place at the time of injury and, "once calculated, the claimant's wages are fixed . . . [and] are then used throughout her claim to calculate the rates for the benefits to which she is entitled[.]"  The WCC supports its interpretation by reading both statutes together: Section 39-71-123(4)(c), MCA, provides that the compensation benefits for injured workers with concurrent employments "must be based on the aggregate of average actual wages *of all employments* . . . from which the employee is disabled by the injury incurred," while § 39-71-703(6), MCA, provides, in relevant part that "[t]he weekly benefit rate for permanent partial disability is 66 2/3% of the wages received *at the time of injury*[.]"  (Emphases added.)  The WCC concluded Barnhart is therefore entitled to have both jobs included in her PPD indemnity benefit rate

---

[5] "Actual wage loss" means that the wages that a worker earns or is qualified to earn after the worker reaches maximum healing are less than the actual wages the worker received at the time of the injury.  Section 39-71-116(1), MCA.

6

even though post-MMI she is only precluded from returning to Dairy Queen and suffered no actual wage loss at YDI.

¶13 Permanent disability benefits are calculated at MMI because an injured worker's entitlement to either PPD or permanent total disability indemnity benefits cannot be determined until the worker reaches MMI. *Rausch*, ¶ 23, n.1. The WCC determined that this post-MMI determination nonetheless employs the worker's time-of-injury wages in the same manner as those wages are used to calculate the impairment award. State Fund argues that Barnhart is entitled to PPD indemnity benefits only for employments from which she experienced an actual wage loss upon reaching permanent disability—i.e., MMI. State Fund asserts that while § 39-71-703(2), MCA, dictates that an impairment award is calculated without regard to wage loss, § 39-71-123(4)(c), MCA, dictates that the PPD indemnity benefit rate is derived from "the aggregate of average actual wages of all employments . . . *from which the employee is disabled* by the injury incurred," and the WCC incorrectly concluded that an injured worker's "disability" is always established at the time of injury. (Emphasis added.)

¶14 State Fund asserts that the WCC imposed a "temporal framework" upon § 39-71-123(4)(c), MCA, that does not exist in the language of the statute, conflating the time-of-injury wage calculation for impairment awards with the "disability analysis" for calculation of the PPD indemnity benefit rate. State Fund contends that for purposes of determining Barnhart's entitlement to PPD indemnity benefits, her "disability" necessarily

7

occurred at MMI, and since she was only determined to be disabled from the Dairy Queen job, her YDI wages were correctly excluded from the indemnity benefit calculation.

¶15 We have held that "[t]he plain language of the [WCA] clearly demonstrates that the term 'disability' is tied to a wage loss or impairment in the ability to earn wages through employment." *Tinker v. Mont. State Fund*, 2009 MT 218, ¶ 32, 351 Mont. 305, 211 P.3d 194; § 39-71-1011(3), MCA (defining "disabled worker" as "a worker who has a permanent impairment, established by objective medical findings, resulting from a work-related injury that precludes the worker from returning to the job the worker held at the time of the injury or to a job with similar physical requirements and who has an actual wage loss as a result of the injury."). Relying on *Tinker*, State Fund argues that PPD indemnity benefits are paid specifically for disabilities that remain upon reaching MMI, and it is illogical to pay PPD indemnity benefits based upon a pre-MMI wage determination when entitlement to PPD indemnity benefits requires a partial loss of wages post-MMI. Sections 39-71-116(27)(a) and (b), MCA.

¶16 State Fund further maintains that the WCC failed to take the explicit policy consideration of § 39-71-105(1), MCA, into account:

> An objective of the Montana workers' compensation system is to provide, without regard to fault, wage-loss and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole but are intended to provide assistance to a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.

8

State Fund argues that the WCC's interpretation of the statutes fails to maintain the reasonable relationship between wage-loss benefits and actual wage loss that § 39-71-105(1), MCA, requires. It argues that by aggregating all of Barnhart's concurrent employments, without regard to whether she suffered an actual wage loss at each individual employment, the WCC violated the express public policy of the WCA by awarding Barnhart wage-loss benefits for employment at which she sustained no actual wage loss and thus the resulting award is unreasonable.

¶17 When interpreting statutes, we look first to their plain language in order to give effect to the intent of the Legislature in enacting them. Moreover, we view each statute as part of a whole statutory scheme and construe it so as to forward the purpose of that scheme. *Tinker*, ¶ 30 (citations and internal quotations omitted). When more than one interpretation is possible, in order to promote justice, we will reject an interpretation that leads to an unreasonable result in favor of another that will lead to a reasonable result. *Rausch*, ¶ 29 (citation omitted).

¶18 We have held that we cannot extract the public policy of the reasonable relationship set forth in § 39-71-105(1), MCA, to vary specific statutory provisions enacted by the legislature. *King v. State Comp. Ins. Fund*, 282 Mont. 335, 339, 938 P.2d 607, 609 (1997). However, we also do not ignore this express statement of legislative intent. A situation that implicates actual wage loss necessarily implicates § 39-71-105(1), MCA. *Wilkes v. Mont. State Fund*, 2008 MT 29, ¶ 20, 341 Mont. 292, 177 P.3d 483. Thus, Barnhart's case clearly implicates this policy.

¶19 Actual wage loss represents the primary factor for determining PPD indemnity benefits. *Wilkes*, ¶ 23. Section 39-71-116(1), MCA, defines "actual wage loss" as "the wages that a worker earns or is qualified to earn after the worker reaches maximum healing are less than the actual wages the worker received at the time of the injury." In this case, Barnhart's actual wage loss upon reaching MMI is $281.91 per week since, as her treating physician opined, she was not able to return to work at Dairy Queen after she reached MMI. This wage loss is the primary factor to consider in determining Barnhart's eligibility for PPD indemnity benefits, and it must be viewed in light of the policy considerations of § 39-71-105(1), MCA.

¶20 In *Sturchio v. Wausau Underwriters Ins. Co.*, 2007 MT 311, 340 Mont. 141, 172 P.3d 1260, a worker who had five concurrent employments suffered an industrial injury that left her unable to work for a time. *Sturchio*, ¶ 4. Although her employers differed in their methods of paying her wages, her insurer calculated her average wages for each concurrent employment by using the four pay periods immediately preceding her injury, as set forth in § 38-71-123(3)(a), MCA, asserting that the statute authorized it to use a single wage-calculation method for all concurrent employments. *Sturchio*, ¶¶ 4, 6. Sturchio argued that the insurer should consider each employment individually and use the statutorily authorized wage-calculation method that best suited that employment's method of payment. The WCC agreed with Sturchio. *Sturchio*, ¶ 6. We considered the insurer's arguments, and the WCC's analysis, through the lens of whether the positions they advocated supported the Legislature's express public policy, ultimately concluding that the

insurer's interpretation of § 39-71-123, MCA, was precluded by § 39-71-105(1), MCA, because its interpretation would sever the reasonable relationship between actual wage loss and wage-loss benefits. *Sturchio*, ¶ 16. We concluded that the WCC's interpretation both honored the plain language of the statute and "further[ed] the legislative policy that wage-loss benefits 'bear a reasonable relationship to actual wages lost[.]'" *Sturchio*, ¶ 16. We therefore affirmed the WCC. *Sturchio*, ¶¶ 18-19.

¶21 In this case, the WCC read § 39-71-123(4)(c), MCA, and § 39-71-703(6), MCA, together in making its determination as to whether Barnhart's YDI wages should be included in calculating her PPD indemnity benefit rate. Under the WCC's interpretation, if *any* wage loss occurs, then *all* time-of-injury wages are included in the PPD indemnity benefit rate calculation. The WCC rejected State Fund's policy argument because it ruled that aggregating Barnhart's wages from both employments "bears a more reasonable relationship to the actual wages she has lost."

¶22 The WCC's interpretation leads to Barnhart's PPD indemnity benefits award exceeding her actual wage loss. As set forth in the parties' stipulated facts, at the time of her injury, Barnhart worked an average of 15.2 hours per week at Dairy Queen, for which she earned $18.55 per hour, for an average weekly wage of $281.91. Following the WCC's interpretation, Barnhart would receive $384.00 per week in PPD indemnity benefits— $102.09 *more* than her actual Dairy Queen wage loss—and she would receive this amount in addition to her wages from YDI, which the parties agree she remains qualified to earn post-MMI. Moreover, the WCC's interpretation will cause the relationship of PPD

11

indemnity benefit rate to actual wage loss to be wildly disproportionate in factually similar cases. For example, if Barnhart's part-time job had been five hours per week at $10 per hour, her actual wage loss would have been $50 but she would nonetheless remain entitled to $384.00 per week in PPD indemnity benefits under the WCC's interpretation.

¶23 As explained in § 39-71-105(1), MCA: "Wage-loss benefits are not intended to make an injured worker whole but are intended to provide assistance to a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease." Under the WCC's interpretation, Barnhart would receive PPD wage-loss benefits in excess of her actual lost wages. This does not further the legislative policy of § 39-71-105(1), MCA. We must reject an interpretation that leads to an unreasonable result in favor of another that will lead to a reasonable result.

## CONCLUSION

¶24 The WCC erred by ruling that Barnhart's PPD indemnity benefit rate is aggregated from both of her time-of-injury concurrent employments when she was only precluded from one employment upon reaching MMI. State Fund correctly calculated Barnhart's PPD indemnity benefit rate based upon her average weekly wage of $281.91 from her Dairy Queen job as these are her actual wages lost as a result of her work-related disability.

¶25 Reversed.

/S/ JAMES JEREMIAH SHEA

12

We concur:


/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE


Justice Beth Baker did not participate.