FILED

06/24/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0162

DA 24-0162

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 130

JORDAN PEREA,

      Petitioner and Appellant,

  v.

AMTRUST INS. CO.,

      Respondent and Appellee.

APPEAL FROM:    Montana Workers' Compensation Court, WCC Nos. 2023-6389 and 2023-00010
Honorable Lee Bruner, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Stacy Tempel-St. John, Linnell, Newhall, Martin & Schulke, P.C., Great Falls, Montana

      For Appellee:

            Steven W. Jennings, Marina A. Tucker, Crowley Fleck, PLLP, Billings, Montana

                Submitted on Briefs:  September 4, 2024

                         Decided:  June 24, 2025

Filed:

                _____
                            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Jordan Perea appeals from the Workers' Compensation Court's ("WCC") January 29, 2024, Order Denying Parties' Cross-Motions for Summary Judgment and Establishing Applicable Compensation Rates; and March 13, 2024, Order Denying Petitioner's Motion for Reconsideration.

¶2     The dispositive issues on appeal are as follows:

*Issue 1: Whether AmTrust's payment of the full amount of Perea's claimed benefits removes our jurisdiction over the case.*

*Issue 2: Whether the WCC erred by declining to award a penalty against AmTrust pursuant to § 39-71-2907, MCA.*

¶3     We reverse and remand for proceedings consistent with this opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     This dispute arises from an injury Perea suffered to his knee on November 11, 2022, while working at Truss Works, Inc. ("Truss Works").

¶5     In the four pay periods prior to his injury, Perea earned the following wages[1] from Truss Works:

| 10/17/22-10/30/22 (paid 10/31/22) | $2,013.00 |
| 10/3/22-10/16/22 (paid 10/17/22) | $1,935.00 |
| 9/19/22-10/2/22 (paid 10/3/22) | $2,081.25 |
| 9/5/22-9/18/22 (paid 9/19/22) | $2,107.00 |

---

[1] All payments containing overtime in this table are reduced to straight time.

¶6 On November 8, 2022, Perea started a second job at Life in Bloom at the rate of $16.00 per hour for 20 hours per week. On November 16, 2022, Perea ceased work at Truss Works due to his injury but continued to work at Life in Bloom. Truss Works terminated Perea's employment on November 28, 2022. On November 29, 2022, Perea asked his employer's workers' compensation insurer, AmTrust Insurance Co. ("AmTrust"), to confirm acceptance of his claim and payment of wage loss benefits. On December 3, 2022, Perea started a third job at The Block earning $14.00 per hour.

¶7 AmTrust accepted Perea's claim on December 15, 2022. Between December 15, 2022, and February 21, 2023, Perea and AmTrust exchanged differing calculations of the benefits owed to Perea.

¶8 On March 5, 2023, Perea underwent surgery for his injury and ceased working at both Life in Bloom and The Block.

¶9 Perea filed a Petition in the WCC on April 6, 2023, arguing in relevant part: (1) AmTrust incorrectly calculated his Average Weekly Wage ("AWW") for Temporary Total Disability ("TTD") benefits based on his wages from Life in Bloom; (2) that he was entitled to attorney's fees, costs, and a penalty pursuant to §§ 39-71-611 and -2907, MCA; and (3) § 39-71-712(2), MCA's limitation of the AWW for Temporary Partial Disability ("TPD") to 40 hours per week is unconstitutional as applied to his circumstances.[2] On April 24, 2023, AmTrust paid Perea the full amount of his claimed benefits based on Perea's calculations; however, AmTrust reserved the right to seek repayment or

_____

[2] Perea also raised a facial challenge to § 39-71-712(2), MCA's 40-hour limitation, but he does not appeal the WCC's denial of that claim, so we need not consider it.

recoupment subject to the WCC's decision. On April 25, 2023, AmTrust filed a response to Perea's petition.

¶10 On June 8, 2023, Perea moved for summary judgment. AmTrust filed a cross-motion for summary judgment on June 29, 2023. On October 19, 2023, the WCC requested additional materials from both parties, including a Joint Statement of Facts. The parties filed their Joint Statement of Facts on November 15, 2023.

¶11 On January 29, 2024, the WCC issued an Order Denying the Parties' Cross-Motions for Summary Judgment and Establishing Applicable Compensation Rates. In its Order, the WCC set forth three time periods in which it determined the question of the correct calculation of Perea's benefits would have three different answers:

> **Period #1, November 28 to December 2, 2022:** The WCC determined that Perea was not able to work at Truss Works due to his injury but was able to continue working at Life in Bloom. Therefore, the WCC determined that Perea was entitled to TTD based on his Truss Works wages only. Neither party contests the WCC's determinations as to this period.

> **Period #2, December 3, 2022, to March 4, 2023:** The WCC determined that Perea was not able to work at Truss Works, he was working at The Block, and he had ceased working at Life in Bloom on January 20, 2023, for reasons unrelated to his injury. Therefore, the WCC determined Perea was entitled to TPD calculated by subtracting only his wages from The Block from his lost wages at Truss Works.

> **Period #3, March 5 to April 30, 2023:** The WCC determined that Perea was not working anywhere, so he was entitled to TTD benefits based on his pay from Truss Works and The Block only.

¶12 The WCC determined that Perea was not entitled to attorney's fees, costs, or a penalty for AmTrust's failure to correctly calculate his benefit entitlement in any of these three periods because the correct calculation "involve[d] an issue of first impression in

4

Montana." The WCC therefore determined that AmTrust's calculation was not unreasonable.

¶13 Regarding Perea's constitutional challenge to § 39-71-712(2), MCA's 40-hour restriction, the WCC held that Perea had standing to bring an as-applied equal protection challenge under Article II, Section 4, of the Montana Constitution because the restriction lowered the amount of money to which he was entitled for TPD benefits. The WCC held that because the "only distinguishing factor between" workers who were working more than 40 hours per week prior to injury and those working less than 40 hours per week prior to injury was "the number of hours worked," they were similarly situated classes. The WCC held that the restriction passed rational basis scrutiny because it was reasonably related to the government's interest in providing "a system of no-fault compensation to injured workers while maintaining a reasonable cost for employers."

¶14 On January 31, 2024, Perea moved for reconsideration pursuant to Admin. R. M. 24.5.337(1)(a) (2018). Perea argued that the WCC had "overlooked" the material fact in the parties' briefs that Perea had ceased working at Life in Bloom on March 4, 2023, not January 20, 2023, and that he left Life in Bloom because of surgery for his injured knee, therefore entitling him to TTD benefits that included his AWW at Life in Bloom in Period #3. AmTrust responded to Perea's motion for reconsideration by agreeing that

> the Court's conclusion that Petitioner terminated his employment with Life in Bloom on January 20, 2023 was factually incorrect. Respondent further agrees and concedes that Petitioner was taken off work at Life in Bloom for reasons due to his workplace injury and therefore as of March 5, 2023, Petitioner suffered an injury [which] caused wage loss at both Truss Works and Life in Bloom from March 5, 2023 to April 30, 2023.

5

Despite the parties' agreement, the WCC denied Perea's motion for reconsideration, stating that "the parties would have had to introduce [the date of Perea's last day of employment at Life in Bloom] in the Joint Statement of Facts with proper citation to the record" in order for the WCC to consider it "overlooked."

## STANDARDS OF REVIEW

¶15    When reviewing decisions of the WCC, we review findings of fact to determine if they are supported by substantial credible evidence, and we review conclusions of law to determine if they are correct. *Fleming v. Int'l Paper Co.*, 2008 MT 327, ¶ 17, 346 Mont. 141, 194 P.3d 77 (citing *Kruzich v. Old Republic Ins. Co.*, 2008 MT 205, ¶¶ 16-18, 344 Mont. 126, 188 P.3d 983). In reviewing the WCC's grant or denial of summary judgment, we apply the same standard as we apply when reviewing a district court's ruling on summary judgment: we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 9, 353 Mont. 265, 222 P.3d 566.

## DISCUSSION

¶16    A worker is entitled to TTD benefits when the worker "suffers a total loss of wages as a result of an injury and until the worker reaches maximum healing." Section 39-71-701(1)(a), MCA. Determining the AWW for compensation benefit purposes is based on:

> the average actual earnings for the four pay periods immediately preceding the injury . . . except that if the term of employment for the same employer is less than four pay periods, the employee's wages are the hourly rate times the number of hours in a week for which the employee was hired to work.

Section 39-71-123(3)(a), MCA. The AWW calculation includes all concurrent "employment in which the employee was actually employed at the time of the injury and would have continued to be employed without a break in the term of employment if not for the injury." Section 39-71-123(4)(a), MCA; *Sturchio v. Wausau Underwriters Ins. Co.*, 2007 MT 311, ¶ 14, 340 Mont. 141, 172 P.3d 1260. When calculating AWW, overtime wages are reduced to the regular hourly rate. Section 39-71-123(1)(a), MCA. TTD compensation benefits are 66 2/3% of the worker's time of injury AWW, but may not exceed the state's average weekly wage at the time of injury. Section 39-71-701(3), MCA.

¶17 A worker is entitled to TPD benefits "if prior to maximum healing an injured worker has a physical restriction and is approved to return to a modified or alternative employment . . . and the worker suffers an actual wage loss as a result of a temporary work restriction." Section 39-71-712(1), MCA. TPD benefits are calculated by subtracting "the actual weekly wages earned during the period that the claimant is temporarily partially disabled" from the claimant's time of injury AWW. For TPD purposes only, the AWW calculation is capped at "a maximum of 40 hours a week." Section 39-71-712(2), MCA. TPD benefits may not exceed the amount the worker would have received in TTD had the worker not returned to modified or alternative employment. Section 39-71-712(2), MCA.

¶18 *Issue 1: Whether AmTrust's payment of the full amount of Perea's claimed benefits removes our jurisdiction over the case.*

¶19 Perea raises three arguments on appeal pertaining to calculation of his benefits. First, he argues that the WCC miscalculated his Period #2 and #3 benefits by failing to include his wages at Life in Bloom in those calculations based on its understanding that he

7

left that position on January 20, 2023, for reasons unrelated to his injury. Second, he argues that his TPD benefits in Period #2 were unconstitutionally diminished by § 39-71-712(2), MCA's 40-hour restriction. Third, he argues that the WCC miscalculated his TPD in Period #2 by reducing his actual weekly wages earned at The Block to his regular hourly wage.

¶20 AmTrust argues that this Court lacks jurisdiction over Perea's appeal of these calculation issues because AmTrust paid Perea the full amount of benefits he claimed on April 24, 2023, eliminating any "case or controversy" between the parties. "Courts lack power to resolve a case brought by a party without standing—i.e., a personal stake in the outcome—because such a party presents no actual case or controversy." *Mitchell v. Glacier Cnty.*, 2017 MT 258, ¶ 9, 389 Mont. 122, 406 P.3d 427 (citation omitted). "Under the constitutional case-or-controversy requirement, the plaintiff must show . . . that he or she has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action." *Mitchell*, ¶ 10 (citation omitted). AmTrust argues that because it has already paid Perea all of the benefits he seeks, there is no further injury we can alleviate.

¶21 Perea responds in his reply brief that AmTrust's payment was made under a reservation of rights pursuant to § 39-71-608(1), MCA, asserting that it intended to recoup any overpayment from Perea as determined by the WCC. We have ruled multiple times on appeals from the WCC where insurers had paid benefits under a reservation of rights. *See, e.g., Stewart v. Liberty Nw. Ins. Corp.*, 2013 MT 107, ¶ 28, 370 Mont. 19, 299 P.3d 820; *Newlon v. Teck Am., Inc.*, 2015 MT 317, ¶ 5, 381 Mont. 378, 360 P.3d 1134; *Liberty*

8

*Nw. Ins. Corp. v. Mont. State Fund*, 2009 MT 386, ¶ 3, 353 Mont. 299, 219 P.3d 1267. But unlike these prior cases, AmTrust affirmatively asserts that its payment has removed the controversy from the case. It is axiomatic that payment of benefits cannot eliminate a controversy over those benefits if the insurer continues to maintain its right to recoup its payment, because the asserted recoupment would itself be a controversy over those same benefits. As it pertains to all of Perea's claims, AmTrust argues that if this Court rules in Perea's favor, "the ruling will change nothing because AmTrust has already paid [Perea's] benefits according to [Perea's] calculations." Necessarily implicit in AmTrust's argument, therefore, is its waiver on appeal of any right to seek recoupment. Otherwise, AmTrust's argument makes no sense. We therefore construe AmTrust's assertion that its payment of full benefits pursuant to Perea's calculation constitutes an end to the controversy as a waiver of its right to seek any recoupment of the benefits it has paid.

¶22 Perea asserts that "even if there was not a justiciable controversy," we should nevertheless proceed to the merits of his claims pursuant to the "voluntary cessation" exception. The voluntary cessation exception "allows a case to proceed that 'would otherwise have been rendered moot by a defendant's voluntary cessation of the challenged action.'" *Wilkie v. Hartford Underwriters Ins. Co.*, 2021 MT 221, ¶ 9, 405 Mont. 259, 494 P.3d 892 (quoting *Montanans Against Assisted Suicide (MASS) v. Bd. of Med. Exm'rs*, 2015 MT 112, ¶ 11, 379 Mont. 11, 347 P.3d 1244). The doctrine "addresses the concern 'that a defendant will attempt to moot only a plaintiff's meritorious claims, thereby avoiding an undesirable judgment on the merits.'" *Wilkie*, ¶ 9 (quoting *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 34 n.7, 333 Mont. 331, 142 P.3d 864). "Due to

concern that a defendant may utilize voluntary cessation to manipulate the litigation process, the heavy burden of demonstrating the challenged conduct cannot be reasonably expected to start again lies with the party asserting mootness." *Wilkie*, ¶ 10 (quotation omitted).

¶23 Perea accurately quotes our holding in *Wilkie* regarding the voluntary cessation exception. But as it might pertain specifically to the facts of this case, Perea's *only* argument for application of the exception is his assertion that "AmTrust cannot simply allege there is no case or controversy at this stage in the proceeding when it had previously confirmed Perea would be forced to pay back benefits." Although Perea presents his voluntary cessation argument as an alternative to his principal argument that his claims are not moot, in substance he is just rearguing that AmTrust cannot claim there is no justiciable controversy while maintaining its right to seek recoupment. On that point, as discussed above, we agree. But we only apply the voluntary cessation exception "where the reasonableness of [the recurrence of a voluntarily ceased wrong] is supported by evidence, rather than speculation or allegation alone." *Wilkie*, ¶ 15 (quoting *Montanans Against Assisted Suicide*, ¶ 15). In the absence of a more fully developed argument regarding whether the voluntary cessation exception should apply to AmTrust's actions in this case— and having held that AmTrust has waived its right to seek recoupment of the benefits it has already paid to Perea—we decline to consider Perea's voluntary cessation argument.

¶24 Having waived its right to recoup any of the payments it made to Perea on April 24, 2023, we agree that AmTrust's payment of all Perea's claimed benefits pursuant to his calculated loss has alleviated any injury Perea could allege as to all but his claim that he is

10

entitled to a penalty for AmTrust's delay in making that payment. Therefore, Perea lacks standing to raise any claim on appeal except for his claim for a penalty.

¶25    *Issue 2: Whether the WCC erred by declining to award a penalty against AmTrust pursuant to § 39-71-2907, MCA.*

¶26    Section 39-71-2907, MCA, permits the WCC to assess against an insurer a penalty of 20% of "the full amount of benefits due a claimant during the period of delay or refusal to pay" if that delay or refusal was unreasonable. "Reasonableness is a question of fact, subject to the substantial credible evidence standard of review." *Bryer v. Accident Fund Gen. Ins. Co.*, 2023 MT 104, ¶ 54, 412 Mont. 347, 530 P.3d 801 (citation omitted). "In reviewing the WCC's reasonableness findings, we restrict our inquiry to determining whether substantial credible evidence supports the findings actually made by the WCC." *Bryer*, ¶ 54 (citation omitted).

¶27    The WCC held that calculating Perea's AWW in Period #1 involved a question of first impression, so AmTrust did not act unreasonably when it attempted to calculate Perea's Period #1 benefits. Perea does not challenge the WCC's calculation of his benefits in Period #1 but argues that AmTrust unreasonably miscalculated his TTD benefits in Period #3 by using an average of his weekly wages at Life in Bloom to calculate his AWW rather than the "hired to work" method. To support his argument, Perea relies on our decision in *Sturchio*.

¶28    In *Sturchio*, we considered the appropriate method of calculating AWW where, as in this case, an employee works multiple jobs prior to injury but has not worked a full four pay periods at each job prior to injury. Sturchio, a certified nursing assistant, was working

five different jobs when she suffered a workplace injury at one of them. *Sturchio*, ¶¶ 4-5. Her employer's insurance company, Wausau Underwriters Insurance Company ("Wausau"), calculated her AWW based on the average pay she received in the prior four pay periods from all five jobs. *Sturchio*, ¶ 6. Sturchio argued that each job's wages should be considered separately when calculating AWW, and that Wausau should have used the calculation method provided for in § 39-71-123(3), MCA, that "best suited to each employment's particular circumstances." *Sturchio*, ¶ 6. We agreed with Sturchio and held that § 39-71-123(4)(a), MCA's reference to Subsection 3 encompassed all methods of calculation described therein and that an insurer was required to use the method of calculation that most directly applied to the circumstances of the worker's employment prior to injury. *Sturchio*, ¶¶ 18-19.

¶29    In this case, as with Sturchio's five jobs prior to injury, Perea was working at both Truss Works and Life in Bloom prior to his injury. During Periods #1 and #2, Perea's injury did not affect his work at Life in Bloom. In Period #3, Perea's surgery to repair his injury caused him to leave his employment at Life in Bloom and suffer a loss of wages. At that point, under § 39-71-123(4)(a), MCA, and as well established by our holding in *Sturchio*, AmTrust was required to apply the method of AWW calculation best suited to the circumstances of Perea's employment at Life in Bloom *prior* to his injury. As of the day of his injury, November 11, 2022, Perea had only been working at Life in Bloom for three days. Therefore, as it pertained to his Life in Bloom employment, AmTrust should have applied the "hired to work" standard outlined in § 39-71-123(3)(a), MCA, for

12

positions workers have held for less than four pay periods prior to injury.[3]   Instead, AmTrust took the average of Perea's wages at Life in Bloom from four pay periods *after* his injury occurred.  The plain text of § 39-71-123(4)(a), MCA, and as clearly established in *Sturchio*, make clear that this post-injury calculation was improper.   AmTrust's calculation to the contrary was unreasonable.

¶30     AmTrust's reliance on *Barnhart v. Mont. State Fund*, 2022 MT 250, 411 Mont. 138, 522 P.3d 418, to defend the reasonableness of its Period #3 calculation is misplaced.  In *Barnhart*, we considered a case in which an employee was partially permanently disabled due to an injury at one job preventing her work at a second job.  *Barnhart*, ¶ 4.  We held that § 39-71-123(4)(a), MCA, does not permit a worker to receive benefits based on wages from a job her injury has not affected.  *Barnhart*, ¶¶ 14, 24.  Here, the parties do not dispute that Perea's injury caused him to lose wages at both Truss Works and Life in Bloom during Period #3.

¶31     The facts of *Barnhart* are inapposite to this case, while *Sturchio* is directly on point.  AmTrust's calculation of Perea's TTD benefits for Period #3 was unreasonable.  Perea is entitled to a penalty pursuant to § 39-71-2907, MCA, to the extent attributable to AmTrust's unreasonable delay in paying his correct TTD benefits for Period #3.

---

[3] AmTrust eventually employed the correct calculation on January 27, 2023, arriving at the correct AWW for Period #3 of $1,337.13.

13

**CONCLUSION**

¶32    The WCC's January 29, 2024, Order is vacated as moot and this case is remanded for the WCC to award Perea with a penalty pursuant to § 39-71-2907, MCA, to the extent that it is attributable to AmTrust's unreasonable delay in paying the correct benefits for Period #3.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

14